Sri Clyde **COLLINS**, Plaintiff,

v.

**Glenn S. GOORD, et al., Defendants.**

**No. 05 CIV.7484 MBM.**

United States District Court,
S.D. New York.

July 11, 2006.

---

Sri Clyde Collins, Rochester, NY, for Plaintiff pro se.

Eliot Spitzer, Esq., Attorney General of the State of New York, Lee Alan Alderstein, Esq., Assistant Attorney General, Brian J. Schmidt, Esq., Assistant Attorney General, New York, NY, for defendants.

OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff Sri Clyde Collins, an inmate recently released from Oneida Correctional Facility, brings this *pro se* action under

42 U.S.C. § 1983 (2000) against New York State Department of Correctional Services Commissioner Glenn S. Goord and several employees of the Fishkill Correctional Facility alleging denial of access to the courts, deprivation of property without due process, and retaliation for the exercise of constitutionally protected rights. Defendants have moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) arguing that plaintiff failed to exhaust some of his claims as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e (2000), and failed to state a constitutional violation as to the other claims. For the reasons set forth below, defendants' motion to dismiss is converted to one for summary judgment for the limited purpose of considering exhaustion and summary judgment is granted as to some of plaintiff's allegations. As for the remaining allegations, defendants' motion to dismiss is granted on two of plaintiff's access to courts claims and on his due process claim. Defendants' motion to dismiss is denied with respect to plaintiff's remaining access to courts claim and his First Amendment retaliation claim.

In addition, plaintiff has moved to amend his complaint pursuant to Fed. R.Civ.P. 15(a) to identify defendant John Doe as "C.O. McConnell." This motion is granted as explained below.

## I.

The following facts are drawn from plaintiff's amended complaint, original complaint (which plaintiff incorporates by reference into his amended complaint), the documents attached to these complaints, and plaintiff's opposition materials.[1]

In early 2005, while incarcerated at the Gowanda Correctional Facility ("Gowanda"), Collins appeared at a disciplinary proceeding to face charges that he violated prison rules and regulations. (Compl.¶ II.D) The proceeding resulted in a sentence of six months of confinement in a Special Housing Unit ("SHU") and loss of prison privileges and other benefits. (*Id.*) On March 21, 2005, Collins filed an Article 78 petition in the New York Supreme Court, Erie County, asking the Court to strike down these punitive sanctions and moved for an Order to Show Cause ("OTSC") to compel Gowanda officials to explain why such relief should not be granted. (Compl.¶ II.D) On April 13, the Erie County Supreme Court issued the OTSC and directed Collins to serve copies of the OTSC and his original Article 78 petition on the officials named in the petition by April 29. (*Id.; see also* Order to Show Cause, dated April 13, 2005 ("OTSC"), attached as part of Ex. A to Collins Opp'n Decl.; Inmate Grievance Complaint, dated June 7, 2005 ("June 7 Grievance"), attached to Compl.)[2] By this time, Collins had already been transferred from Gowanda to the Fishkill Correctional Facility ("Fishkill") to serve his six months of punitive confinement.

Plaintiff's difficulties began when he tried to obtain photocopies of the OTSC

---

1. Because Collins, as a *pro se* plaintiff, is subject to a more liberal pleading standard, I will consider factual allegations contained in his opposition papers to supplement the allegations in his original and amended complaints. *See Johnson v. Wright*, 234 F.Supp.2d 352, 356 (S.D.N.Y.2002); *Fox v. Fischer*, No. 04 Civ. 6718(MBM), 2005 WL 1423580, at *2 n. 1 (S.D.N.Y. June 14, 2005); *Verley v. Goord*, No. 02 Civ. 1182(PKC)(DF),

2004 WL 526740, at *5 (S.D.N.Y. Jan. 23, 2004).

2. The OTSC stated that plaintiff had to serve "a signed and executed copy of this Order to Show Cause, the petition and any supporting papers, by ordinary First Class mail, upon named respondents ...." (*See* Order to Show Cause, dated April 13, 2005, attached as part of Ex. A to Collins Opp'n Decl., at 3)

from Fishkill's Law Library, staffed by defendants C. Good ("Good"), Law Library Administrator; C. Manning ("Manning"), Law Library Supervisor; and John Doe, Law Library Supervisor.[3] Although the course of events that followed is unclear, Collins' submissions suggest that he made several attempts to get copies of the OTSC, but was unable to because he had no funds in his inmate account. (Compl.¶ II.D) For example, on April 18, in a letter responding to a memorandum the Law Library sent him regarding photocopying advances, Collins argued to the Law Library staff that a DOCS directive, No. 4483, entitled him to free copies (See Letter to Law Library, dated April 18, 2005 ("April 18 Letter"), attached as part of Ex. A to Collins Opp'n Decl.) On April 21, the Law Library advised Collins that he had to inform the Court that he lacked the funds to make copies to serve the respondents and presumably seek a court order for copies. (Law Library Mem., dated April 21, 2005 ("April 21 Memorandum"), attached to Compl.) Accordingly, on April 22, Collins wrote Oliver Young, the Erie County Supreme Court's Principal Court Attorney, to inform Young that a court order was needed for the copies and ask if Young could copy and serve the OTSC himself. (See Letter to Hon. Oliver C. Young, dated April 22, 2005 ("April 22 Letter"), attached as part of Ex. A to Collins Opp'n Decl.) Young told Collins that the Court could not serve the papers and advised him to seek a two-week adjournment of the service date. (Letter to Hon. Timothy J. Drury and Oliver C. Young, dated June 27, 2005 ("June 27 Letter"), attached to Compl.) Collins does not disclose whether he sought an adjournment.

Although Collins does not detail other particular acts that frustrated his photocopying efforts, he alleges generally that he had conveyed his need for the copies "in writing and verbally" to defendants Manning, Good, and John Doe, and "the defendants repeatedly declined to reproduce the required copies." (Collins Opp'n Decl. ¶ 4) Plaintiff alleges that as a result of his inability to obtain the copies he was "forced to abort and withdraw" the OTSC and, on May 27, 2005, he returned the original OTSC unserved to the Erie County Supreme Court. (See June 7 Grievance[4]) Collins' Article 78 action was dismissed in November upon motion by the state due to Collins' failure to serve either the initial petition or the OTSC. (Collins Opp'n Decl. ¶¶ 8–9; see also Exs. C & C–1 to Collins Opp'n Decl.)

Plaintiff's photocopying difficulties prompted him to submit an Inmate Grievance Complaint to Fishkill's Inmate Grievance Resolution Committee ("IGRC") on June 7, 2005. In the grievance, Collins complained that his inability to make copies forced him to withdraw the OTSC. The grievance did not mention any DOCS personnel by name, but stated that "the Law Library declined to advance funds for the copying of the orders for service . . . as the Court ordered." (June 7 Grievance) The grievance requested that "the Law Library . . . comply with Directive # 4483 . . . and to advise/inform inmates of the availability of IAS 2708 Special Services Advances/encumbrances." (Id.) On June 9, the IGRC issued its response ordering

3. Plaintiff alleges elsewhere that John Doe "is and was responsible for the collection, processing and distribution of all S–200 Block inmates' Law Library Services Request Forms and materials requested." (Collins Opp'n Decl. ¶ 12)

4. Collins alleges that he returned the OTSC to the Court unserved on June 27, but his submissions indicate that he actually returned the OTSC on May 27. (See June 7 Grievance; see also June 27 Letter)

no specific relief, noting that Manning claimed not to have received a request for copies. (*See* IGRC Response, dated June 9, 2005 ("June 9 IGRC Response"), attached to Compl.) On June 13, Collins appealed the IGRC's findings to William Mazzuca ("Mazzuca"), Fishkill's Superintendent. (*Id.*) Mazzuca issued an opinion denying Collins' grievance two days later, explaining that "Officer Manning ... stated that at no time did the grievant communicate any need for an advance" and that "[a]ccording to Sr. Counselor Good, the Law Library Administrator, no request for an advance was received." (Superintendent Response, dated June 15, 2005 ("June 15 Superintendent Response"), attached to Compl.)

On June 21, Collins appealed Mazzuca's decision to the Department of Correctional Services' ("DOCS") Central Office Review Committee ("CORC"). In his appeal statement, he claimed that "[a] review of my Law Library Request forms which are on file in the Law Library in addition to correspondence received from the Law Library staff pertaining to my clear requests and need of copies are documented." (June 15 Superintendent Response) On July 13, CORC unanimously denied Collins' grievance and upheld Mazzuca's determination. (CORC Response, dated July 13, 2005 ("July 13 CORC Response"), attached to Compl.) CORC's opinion advised Collins "to contact staff in order to complete and submit an IAS 2708 advance form when requesting an advance for legal photocopies" and noted that "the grievant must provide documentation showing a court ordered need for the photocopies, and also indicate the reason why the copies

could not be made long hand, with carbon paper. Such requests will be evaluated and processed in accordance with Department policy." (*Id.*) The opinion observed also that "[i]n regard to grievant's appeal ... staff indicate that no such forms were received by the Law Library." (*Id.*)

While the grievance proceedings were ongoing, plaintiff's photocopying problems persisted. On or about May 20, 2005, Collins filed what he styled a habeas corpus action in the New York Supreme Court, Dutchess County (Compl.¶ VI.A), to challenge the disciplinary sanctions imposed at Gowanda, which the Court converted into another Article 78 proceeding. (*See* Collins Opp'n Decl. ¶ 10; Letter to the Hon. Peter M. Forman, dated July 27, 2005, ("July 27 Forman Letter") attached as part of Ex. D to Collins Opp'n Decl.) On June 3, in an attempt to obtain the copies needed for service, plaintiff submitted an "Inmate Request Form" asking for an advance from the "Deputy Superintendent of Administration" and the "Law Library Administrator," and wrote Good on June 8 to further pursue his request. (*See* Inmate Request Form, dated June 3, 2005 ("June 3 Request"), attached to Compl.; Letter to Good, dated June 8, 2005 ("June 8 Good Letter"), attached as part of Ex. B to Collins Opp'n Decl.) It appears that Good responded by furnishing Collins with a single copy, rather than the six Collins had requested. (*See* Collins Opp'n Decl. ¶ 6[5])

In August 2005, Collins encountered further difficulties, this time related to the Dutchess County action, as well as a civil action that he had filed in New York State Court of Claims and a federal action he

---

**5.** In his opposition declaration, Collins suggests that this copying incident related to his Erie County action, but the various documents attached to his submissions suggest otherwise. For example, the June 8 letter to Good that apparently prompted Good to provide a single free copy discussed the Dutchess County action, which was still pending, not the Erie County OTSC, which Collins had withdrawn a few weeks earlier. (*See* June 8 Good Letter; *see also* Ex. B to Collins Opp'n Decl.)

had filed in the Western District of New York arising out of earlier events at Gowanda. (*See* Collins Opp'n Decl. ¶ 12; Am. Compl. ¶ 1; Letter to David B. Klingman, dated June 6, 2005 ("June 6 Klingman Letter"), attached as part of Ex. E to Collins Opp'n Decl.) Collins alleges that on August 9, 11, 17, and 23, he submitted requests to Fishkill's Inmate Accounts Office, Manning, and Good, seeking copies of the facility's IAS 2708 "Authorized Advance Request" forms "for the expressed purposes of obtaining photocopies of exigent exhibits and legal documents as required and demanded" for all three pending lawsuits; the requests were "never honored or acted upon." (Am.Compl.¶ 1) Plaintiff's allegations are supplemented by documents illustrating that he filed requests for the IAS 2708 advancement forms on August 9 with the Law Library and Inmate Accounts Office, and on August 17 with Good after being so instructed by the Inmate Accounts Office on August 11. (*See* Exs. B & B–1 to Collins Opp'n Decl.)

Additionally, Collins alleges that on August 21, 2005, Manning, in response to Collins' complaints, took 21 legal documents related to all three actions and promised to make copies of the documents immediately because Collins was set to be transferred out of Fishkill in a few days. (Am.Compl.¶ 2) Instead of receiving the copies, Collins was given his original documents, uncopied, in a folder as he was leaving Fishkill on August 25. (*Id.* ¶¶ 4, 5)

Collins claims also that during his time at Fishkill, his legal efforts were frustrated by the Law Library's failure to furnish "stiff-barreled" black ink pens, which are used to make carbon copies. (*See* Am. Compl. ¶ 4) Collins fails, in his original or amended complaint, to detail specific occasions where the stiff-barreled pens were not provided, aside from noting generally that he was refused such a pen while preparing papers in the Dutchess County action and that his legal efforts were frustrated in the Court of Claims and Western District of New York. (*See* Collins Opp'n Decl. ¶¶ 10, 11) However, he attaches to his complaint an Inmate Grievance Complaint he filed with the IGRC on July 20, 2005, in which he complained that he had "persistently requested [the pens] from the Law Library and Unit's Supply Officers" because he needed them to prepare three to five carbon legal copies of documents. (*See* Inmate Grievance Complaint, dated July 20, 2005, ("July 20 Grievance"), attached to Compl.) The submissions show that the IGRC investigated the grievance and discovered that the Fishkill storehouse did not have the pens in stock, but had placed an emergency order for them. (*Id.*) Unsatisfied with this response, Collins appealed to Superintendent Mazzuca. (*Id.*) Mazzuca's decision is not provided or discussed, but a computer printout submitted by defendants suggests that it was unsatisfactory to Collins because he appealed it to the CORC, which resolved Collins' appeal on August 24, 2005, apparently against him.[6] (*See* Alderstein Decl. ¶ 4; Ex. C to Alderstein Decl.)

Plaintiff's problems continued during his transfer from Fishkill to the Oneida Correctional Facility ("Oneida"), where he completed his incarceration. According to Collins, by the time Fishkill personnel returned his folder of uncopied legal documents on August 25, he was boarding a van to Oneida and all of his other personal

---

**6.** Defendants' submission will be considered for the sole purpose of determining exhaustion, as discussed later in this opinion.

effects had already been processed.[7] (Am. Compl.¶¶ 5, 6) As a result, he was forced to carry the folder onto the van "although the defendants knew, or should have known that transferring inmates are not permitted to possess any item other than their clothes." (*Id.* ¶ 6) Upon arrival at Ulster Correctional Facility ("Ulster"), a stop on the way to Oneida, a corrections officer confiscated the folder, assuring Collins that it would follow him to Oneida. (*Id.* ¶ 7) According to Collins, neither he nor the Oneida Inmate Records Coordinator could locate the folder despite written inquiries to two Ulster officials, Mazzuca, and the Inmate Records Coordinator at Fishkill, and the folder has been declared lost. (*Id.* ¶ 8; Collins Opp'n Mem. 3; Letter to William A. Mazzuca, dated November 9, 2005 ("November 9 Mazzuca Letter"), attached as part of Ex. F to Collins Opp'n Decl.) Collins alleges that loss of the legal documents "was caused by the willful, malicious and retaliative acts and omissions by defendants of . . . Fishkill[' s] . . . Law Library staff, Deputy Superintendent of Programs and Deputy Superintendent of Administration . . . ." (Collins Opp'n Mem. 3)

In addition to losing his legal papers, plaintiff suffered another setback upon his arrival at Oneida: he discovered that his typewriter had been seriously damaged in transit. Collins alleges that on or about February 22, 2005, while he was still at Gowanda, he ordered a new typewriter from a catalog. (Am.Compl.¶ 9) The typewriter arrived at Gowanda, but Collins was not told of its arrival until approxi-mately four weeks after his transfer to Fishkill, where the typewriter was later sent. (*Id.* ¶ 10; Collins Opp'n Mem. 1) At Fishkill, Collins was not permitted to receive the typewriter because he was a SHU inmate. (Am.Compl.¶ 10) When he finally received it at Oneida on August 29, the typewriter had sustained diverse damage to numerous parts, as described in the amended complaint, of a variety and extent that suggested willful rather than accidental conduct; as a result, it was "irreparably damaged and inoperable." (*Id.* ¶ 11) Collins alleges that "[t]his intentional, deliberate and malicious destruction was done by the defendants of either the Gowanda or Fishkill Correctional Facility as a form of retaliation for my legal activities and to frustrate, forestall, impede and curtail my access to the courts."[8] (*Id.* ¶ 12) He claims that he attempted to grieve the typewriter's destruction at Oneida and was informed by "the I.G.R.C. Supervisor" that he had to file an "Inmate Claim Form," which he "completed and filed with the facility's Business Office in addition to a Notice of Intention to File a Claim with the New York State Court of Claims." (Collins Opp'n Decl. ¶ 13; *see also* Inmate Claim Form, dated August 29, 2005 ("August 29 Claim Form"), attached as part of Ex. G to Collins Opp'n Decl.) Collins alleges also that "[t]o obtain a formal Inmate Grievance Form, an inmate must use an Inmate Request Slip to be interviewed before commencing the grievance process," that such forms were not available in Oneida's law library or hous-

---

**7.** Collins states that the folder contained "a Certificate of Incorporation belonging to V.E.N.U.S., Inc., *DOCS Employee Manual* pages which contained information material to [plaintiff's] cause of action, original copy [sic] of legal memorandum and other privileged attorney work product intended to be utilized in the Court of Claims summary judgment proceeding and as required papers in

[the Western District of New York federal action]." (Collins Opp'n Decl. ¶ 12)

**8.** In his opposition declaration, Collins attributes the destruction of the typewriter to "defendants Mazzuca, C. Good, C. Manning, John Doe and Mr. Larkin." (Collins Opp'n Decl. ¶ 1)

ing unit, and that 'Oneida's "I.G.R.C. Supervisor thus screens and obstructs viable grievances of Oneida's C.F. inmates." (*Id.* ¶ 13 n. 1) Elsewhere, he states that, on November 15, the Oneida IGRC Supervisor denied his typewriter grievance and "[t]he facility I.G.R.C. declined to commence and process the grievance as consistent with its policy." (Collins Opp'n Mem. 1)

On August 8, 2005, while incarcerated at Fishkill, Collins filed the complaint in the present action seeking declaratory and injunctive relief and compensatory and punitive damages. On November 3, after his transfer to Oneida, he submitted an amended complaint that sought to incorporate the earlier complaint by reference. After defendant's motion to dismiss was fully submitted, plaintiff filed a motion to amend his complaint on March 29, 2006, to identify defendant "John Doe" as Corrections Officer ("C.O.") McConnell, Tour III Law Library Supervisor. Plaintiff was released from Oneida on June 2, 2006.[9]

## II.

A district court will grant a Fed.R.Civ.P. 12(b)(6) motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41; 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the court must accept all of the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir.2002). In addition, because plaintiff is proceeding *pro se,* the court must "read his papers liberally, interpreting them to raise the strongest ar-

guments that they suggest." *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (internal quotation marks omitted); *see also Davis v. Goord,* 320 F.3d 346, 350 (2d Cir.2003). Nonetheless, "[t]o withstand a motion to dismiss, a § 1983 complaint must set forth specific factual allegations indicating a deprivation of constitutional rights." *McCoy v. Goord,* 255 F.Supp.2d 233, 245 (S.D.N.Y.2003).

## III.

■ Before reaching the merits of plaintiff's Section 1983 claims, I must first determine whether they are subject to the PLRA's "exhaustion" requirement and, if so, whether plaintiff has properly exhausted each claim. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), and must be met "irrespective of the forms of relief sought and offered through administrative avenues," *Booth v. Churner*, 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). At first blush, Collins' lawsuit is subject to the exhaustion requirement; indeed, defendants move to dismiss all but one of his claims for failure to exhaust.

■ Plaintiff's recent release from incarceration, however, has added a twist to an otherwise straightforward analysis. Because Collins is no longer in prison, the

---

**9.** Plaintiff's release from incarceration was revealed when, on May 25, 2006, he filed a "Notice of Change of Address" from Oneida to a residential address. (*See* Dkt. # 22)

DOCS' "Inmate Information" database confirms that Collins was released from Oneida on June 2, 2006.

question naturally arises whether he is still subject to the PLRA and its exhaustion requirement. Without guidance from the Court of Appeals, district courts in this Circuit have reached conflicting results. *Compare Stevens v. Goord,* No. 99 Civ. 11669(LMM), 2003 WL 21396665, at *4 (S.D.N.Y. June 16, 2003) (declining to apply PLRA exhaustion requirement to plaintiff who had been released from incarceration subsequent to filing complaint),[10] *with Finger v. McFinnis,* No. 99 Civ. 9870(LTS), 2004 WL 1367506, at *5 (S.D.N.Y. June 16, 2004) (applying PLRA exhaustion requirement to plaintiff who had been released from incarceration subsequent to filing complaint)[11]. Outside the Second Circuit, courts have generally sided with *Finger* and concluded that exhaustion still applies where, as here, the plaintiff was incarcerated at the time he filed his complaint. *See Cox v. Mayer,* 332 F.3d 422, 424–28 (6th Cir.2003); *Ahmed v. Dragovich,* 297 F.3d 201, 210 (3d Cir.2002); *Dixon v. Page,* 291 F.3d 485, 488–89 (7th Cir.2002); *Chase v. Peay,* 286 F.Supp.2d 523, 527–29 (D.Md.2003), *aff'd,* 98 Fed. Appx. 253 (4th Cir.2004); *Becker v. Vargo,* No. Civ. 02–7380(CO), 2004 WL 1068779, at *3 (D.Or. Feb.17, 2004).

The cases that continue to apply the exhaustion requirement to a released inmate seem more convincing for two reasons. First, the conclusion reached in *Stevens* was largely grounded on the notion, endorsed by the Second Circuit in dictum, *see Morales v. Mackalm,* 278 F.3d 126, 128 (2d Cir.2002), that dismissal of a prisoner's complaint for failure to exhaust must be

without prejudice. Thus, "if the Court were to dismiss plaintiff's claims for failure to exhaust, plaintiff, who is no longer a prisoner, could simply refile his Section 1983 claim without being subject to PLRA's exhaustion requirement," rendering the dismissal an arguably wasteful endeavor. *Stevens,* 2003 WL 21396665, at *4; *see also Morris v. Eversley,* 205 F.Supp.2d 234, 241 (S.D.N.Y.2002) (citing "considerations of judicial efficiency and economy" in declining to dismiss without prejudice). This inefficient result is no longer inevitable, however, because the Second Circuit has retreated from *Morales,* explaining that the case's "broader dictum that dismissal for failure to exhaust 'should' be without prejudice would extend too far if applied to cases where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." *Berry v. Kerik,* 366 F.3d 85, 88 (2d Cir.2004). Instead, dismissal with prejudice is now appropriate if a prisoner previously had administrative remedies at his disposal, but failed to use them without an adequate justification for not doing so. *Id.* at 88; *see also Giano v. Goord,* 380 F.3d 670, 675 (2d Cir.2004); *Finger,* 2004 WL 1367506, at *5 (dismissing with prejudice). Thus, the policy considerations that underlay *Stevens* no longer exist, at least where, as here, the plaintiff had several months of incarceration within which to fully exhaust administrative remedies, but failed to do so.[12]

---

10. *See also Morris v. Eversley,* 205 F.Supp.2d 234, 241 (S.D.N.Y.2002); *Liner v. Goord,* 115 F.Supp.2d 432, 434 (S.D.N.Y.2000); *Hallett v. New York State Dep't of Correctional Servs.,* 109 F.Supp.2d 190, 197 (S.D.N.Y.2000).

11. *See also Richardson v. Romano,* No. 00 Civ. 1076(LEK) (DEP), 2003 WL 1877955, at *2 (N.D.N.Y. Mar. 31, 2003).

12. In the present action, the majority of the alleged constitutional violations occurred between March and August 2005, and plaintiff alleges no violation later than November. Thus, even the most recent legally relevant event—the frustration of the typewriter grievance (*see* Collins Opp'n Mem. 1)—transpired more than six months before Collins was released. "Plaintiff therefore clearly had ample

Second, I do not think that the PLRA's exhaustion provision, Section 1997e(a), can be read as *Stevens* suggests. Section 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 … by a prisoner confined in any jail … until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language plainly makes exhaustion a precondition to filing suit and directs a court to measure compliance as of the time the action is "brought." *See Richardson v. Romano*, No. 00 Civ. 1076(LEK) (DEP), 2003 WL 1877955, at *2 (N.D.N.Y. Mar. 31, 2003) (concluding that "plain terms" of PLRA did not allow "unexhausted claims … to proceed in federal court because the prisoner has been released during the pendency of the action"); *Cox*, 332 F.3d at 424–28 (holding that plaintiffs who filed complaint while incarcerated were subject to exhaustion because PLRA was "straightforward and unmistakable, and not prone to ambiguity"); *Dixon*, 291 F.3d at 488–89 (explaining that PLRA exhaustion applies to formerly incarcerated inmate because "plaintiff's status as a 'prisoner' is to be determined as of the time he brought the lawsuit"); *Chase*, 286 F.Supp.2d at 527–29 (noting that PLRA's "plain language … focuses on the time that a lawsuit is 'brought' in federal court, indicating that the applicability of the exhaustion requirement must be determined at the time of filing"); *Becker*, 2004 WL 1068779, at *3 ("Whether a plaintiff is a 'prisoner' within the meaning of § 1997e(a)'s requirements is determined as of the time the lawsuit is brought."). Here, there is no question that Collins filed both his original and amended complaint when he was a "prisoner confined in any jail" or that his suit related to "prison

conditions." 42 U.S.C. § 1997e(a). His claims are therefore subject to exhaustion analysis and must be dismissed with prejudice unless "special circumstances" justified his failure to exhaust. *Berry*, 366 F.3d at 88.

In general, in order to exhaust remedies, an inmate in a New York State correctional facility must pursue fully his complaint through DOCS's three-step Inmate Grievance Program ("IGP"). First, the inmate must file a grievance with the facility's IGRC, a committee of fellow inmates and prison officials. *See* N.Y. Comp.Codes. R. & Regs. tit. 7, § 701.7(a)(1) (2004). The IGRC must attempt to resolve the grievance informally, hold a hearing if such informal resolution is not possible, and issue a written decision within two working days of the hearing. *Id.* § 701.7(a)(3), (a)(4). Second, if the IGRC's decision is unsatisfactory, the inmate must appeal the decision within four working days to the correctional facility's superintendent, who must respond within 10 working days. *Id.* § 701.7(b)(1), (b)(5). Third, if the superintendent's decision does not resolve the matter, the inmate has four working days to appeal to the CORC, the highest level of appellate review, which must transmit a decision within 20 working days. *Id.* § 701.7(c)(1), (c)(4).

■ As a general matter, only after pursuing all three steps has an inmate "exhausted" his claim. *See generally Woodford v. Ngo*, No. 05–416, 2006 WL 1698937, at *7–*8, —— U.S. ——, 126 S.Ct. 2378, 2387–89, 165 L.Ed.2d 368 (June 22, 2006) (holding that PLRA requires inmates to "properly" exhaust administrative remedies before filing suit in federal

opportunity to exhaust administrative remedies while they were available to him." *Fin-*

*ger*, 2004 WL 1367506, at *5.

court). However, the Second Circuit has cautioned that "while the PLRA's exhaustion requirement is 'mandatory,' certain caveats apply." *Giano*, 380 F.3d at 677 (*quoting Porter*, 534 U.S. at 524, 122 S.Ct. 983). In a case where an inmate challenges a defendant's assertion of failure to exhaust, the court must perform a three-part inquiry to assess exhaustion. *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir.2004). First, "the court must ask whether administrative remedies were in fact 'available' to the prisoner." *Id.* (*quoting Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir.2004)). The test for assessing availability is "an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Hemphill*, 380 F.3d at 688 (internal quotation marks omitted). Second, the court must "inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (internal citations omitted). Third, even where remedies were available and the defendant is not estopped to argue

exhaustion, the court must "consider whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.' " *Hemphill*, 380 F.3d at 686 (*quoting Giano*, 380 F.3d at 677).[13]

Here, defendants argue that Collins has failed to exhaust all of his claims except for one relating to the Article 78 OTSC in the Erie County action. (*See* Def. Mem. 18) In support, they offer a computer printout from DOCS's records listing all the recorded grievances that plaintiff appealed to the CORC, the highest level of appellate review. (Alderstein Decl. ¶ 4; Ex. C to Alderstein Decl.) To consider this material, which is outside the pleadings, I must convert defendants' motion to dismiss into one for summary judgment. Doing so ordinarily requires a court to provide notice to the parties prior to conversion, *see* Fed.R.Civ.P. 12(b). However, such notice is not always required; "[t]he essential inquiry is whether the [the parties] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or [were] taken by surprise and deprived of reasonable opportunity to meet facts outside the pleadings." *Gurary v. Wine-*

---

**13.** The Court of Appeals has yet to address what effect, if any, the Supreme Court's decision in *Woodford* has on the three-step *Hemphill* inquiry. Although *Woodford* holds that a prisoner must "properly" exhaust administrative remedies before suing in federal court, *see Woodford*, —— U.S. ——, at ——, 126 S.Ct. 2378, 2006 WL 1698937, at *1, it appears to leave open the question of whether exhaustion applies in situations such as those identified in *Hemphill* and its companion cases where, for example, administrative remedies are not "available" to the prisoner at the time of the grievable incident or where prison authorities actively interfere with an inmate's ability to invoke such remedies. In fact, Justice Breyer, concurring in the Court's judgment in *Woodford*, cited with approval our Circuit's opinion in *Giano*, which held that exhaustion

is "mandatory" but subject to the "caveats" outlined in *Hemphill*, *see Giano*, 380 F.3d at 677–78, and urged district courts to continue to consider "any challenges that [the prisoner] may have concerning whether his case falls into a traditional exception that the [PLRA] implicitly incorporates." *Woodford*, —— U.S. ——, at ——, 126 S.Ct. 2378, 2006 WL 1698937, at *13 (Breyer, J., concurring in judgment). Although it is open to doubt whether *Woodford* is compatible with the results reached in some of the cases in this Circuit applying *Hemphill*, and parts of the *Hemphill* inquiry may be in tension with *Woodford*, to the extent the *Hemphill* inquiry bears directly on the facts of this case, I do not believe that anything in *Woodford* would change the result. Therefore, the *Hemphill* standard is applied below.

*house,* 190 F.3d 37, 43 (2d Cir.1999) (internal quotation marks omitted); *see also Sira v. Morton,* 380 F.3d 57, 68 (2d Cir. 2004). Applying this principle, district courts have converted motions to dismiss to summary judgment without notice to determine exhaustion in PLRA cases where, as here, both parties submitted materials outside the pleadings and it is apparent that the plaintiff will not be taken by surprise by such conversion. *See, e.g., McCoy,* 255 F.Supp.2d at 255–56; *Curry v. Mazzuca,* No. 05 Civ. 1542(NRB), 2006 WL 250487, at *4 (S.D.N.Y. Feb.2, 2006); *Rivera v. Pataki,* No. 04 Civ. 1286(MBM), 2005 WL 407710, at *7 (S.D.N.Y. Feb.7, 2005); *McCullough v. Burroughs,* No. 04 Civ. 3216(FB)(LB), 2005 WL 3164248, at *1 (E.D.N.Y. Nov. 29, 2005).[14] Therefore, defendants' motion to dismiss is converted into one for summary judgment for purposes of determining exhaustion, and the court must consider whether defendants have demonstrated that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c).

■ Collins identifies six incidents that could give rise to a grievance:(1) denial of free copies of the Erie County OTSC in April and May 2005; (2) denial of free copies of the Article 78 papers in the Dutchess County action in June 2005; (3) denial of free copies of various legal documents in the Dutchess County, New York Court of Claims, and Western District of New York actions in August 2005; (4) denial of stiff-barreled pens for preparation of documents in these three actions; (5) loss of his folder containing 21 legal documents related to these three actions; and (6) destruction of his typewriter.

As to the first incident, defendants do not dispute that Collins filed a grievance relating to his inability to obtain copies of the Erie County OTSC and that he appealed this grievance all the way to the CORC. (*See* Def. Mem. 6–8; Alderstein Decl. ¶ 4) The grievance itself asserts the same allegations as the complaint regarding the Law Library's refusal to provide copies to serve the OTSC and plaintiff's subsequent withdrawal of the OTSC due to his inability to acquire such copies. (*See* June 7 Grievance) Although it does not specifically refer to Good, Manning, or John Doe (collectively, the "library defendants"), the grievance plainly suggests their involvement in wrongdoing and provides "enough information about the conduct of which [Collins] complain[s] to allow prison officials to take appropriate responsive measures." *Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004); *see also Evans v. Manos,* 336 F.Supp.2d 255, 257 (W.D.N.Y. 2004) (sustaining claim against doctor where grievance complained of plaintiff's attempts "to see the institutional nurse or doctor" and his denial of medical treatment, but did not specifically name doctor). This conclusion is strengthened when one considers that both Manning and Good were interviewed as part of the grievance process and plaintiff's CORC appeal statement again alleged the library defendants' involvement. (*See* July 15 Superintendent Response) Plaintiff's Erie County OTSC claim is therefore fully exhausted against Manning, Good, and John Doe.

As to the other defendants, however, "the mere fact that plaintiff filed *some*

14. Defendants served Collins with notice pursuant to Local Civil Rule 12.1 that their motion might be converted to summary judgment for purposes of determining exhaustion (*see* Def.'s Notice to Pro Se Litigant, dated January 31, 2006) and plaintiff submitted an opposing declaration and other materials, as well as "Plaintiff's Statement of Disputed Factual Issues."

grievance, and fully appealed all the decisions on that grievance, does not automatically mean that he can now sue anyone who was in any way connected with the events giving rise to that grievance." *Turner v. Goord*, 376 F.Supp.2d 321, 325 (W.D.N.Y.2005). Collins' grievance does not name or even allude generally to defendants Goord, Mazzuca, and Larkin; it suggests (and was investigated as) nothing more than a discrete dispute between Collins and the Law Library staff about photocopying. (*See* June 7 Grievance) Accordingly, and absent facts that would excuse plaintiff's failure to exhaust under *Hemphill*, summary judgment is granted as to these three defendants and plaintiff's claims arising out of the Erie County Article 78 proceeding are dismissed with prejudice. *See Curry*, 2006 WL 250487, at *7 (dismissing claims against Mazzuca and prison doctor for failure to exhaust because neither were named or otherwise implicated by grievance); *Sanchez v. Fischer*, No. 03 Civ. 4433(GBD), 2005 WL 1021178, at *4 (S.D.N.Y. May 2, 2005) (dismissing claims against doctor for failure to exhaust where plaintiff made no allegations against doctor in administrative submissions or appeals); *Evans*, 336 F.Supp.2d at 258–59 (dismissing claims against prison dentist for failure to exhaust where grievance did not name dentist or allege that plaintiff had received inadequate dental care); *Turner*, 376 F.Supp.2d at 325 (dismissing claims against seven prison officials for failure to exhaust because grievance alleged "nothing more than one discrete instance of maltreatment at the hands of" single defendant).

Moving to the second, third, and fifth incidents, which relate to plaintiff's inability to obtain copies for three other legal proceedings and the loss of his legal papers, plaintiff does not allege that he ever filed grievances relating to these incidents

and defendants show that no such grievances were appealed to the CORC. (*See* Ex. C to Alderstein Decl.) Plaintiff fails also to demonstrate that he fits within any of the three *Hemphill* exceptions. He offers no evidence that the grievance process was unavailable for his copying or loss of documents claims, that the defendants' own actions obstructed his ability to exhaust such claims, that defendants waived their exhaustion defense, or that there exist any "special circumstances" that justify his failure to exhaust. *Hemphill*, 380 F.3d at 686. Although Collins wrote letters and completed forms in repeated efforts to obtain photocopies, these letters and forms are not sufficient absent facts excusing Collins' use of the IGP process. *See Lee v. Carson*, 310 F.Supp.2d 532, 537 (W.D.N.Y. 2004) (holding that prisoner could not exhaust by verbally conveying grievance to two prison guards); *Connor v. Hurley*, No. 00 Civ. 8354(LTS)(AJP), 2004 WL 885828, at *2 (S.D.N.Y. Apr. 26, 2004) (explaining that letters to facility superintendent and DOCS commissioner "may not be deemed substitutes for strict compliance with the requirements of the IGP"): *Colon v. Farrell*, No. 01 Civ. 6480(FE), 2004 WL 2126659, at *5 (W.D.N.Y. Sept.23, 2004) (noting that "letters of complaints to DOCS employees and officials do not satisfy the grievance procedure exhaustion requirement"). Similarly, although Collins attaches written inquiries he made to Mazzuca and other Fiskhill and Ulster officials in an attempt to locate his legal papers, these letters do not constitute a grievance and Collins does not claim that he ever attempted to file one. Therefore, his allegations relating to his copying difficulties in June and August 2005 and the loss of his legal papers are dismissed with prejudice.

As for the stiff-barreled pens incident, the computer printout furnished by defen-

dants shows that plaintiff fully appealed his grievance to the CORC.[15] (*See* Ex. C to Alderstein Decl.) The grievance itself states that plaintiff had "persistently requested from the Law Library and the Unit's Supply Officers the issuance of a 4"-stiff barreled writing pen so as to prepare three to five (3–5) carbon legal copies of documents for court submissions ...." (July 18 Grievance) Despite not naming the library defendants, this grievance would plainly be understood as an allegation of wrongdoing against them; Collins has therefore properly exhausted his stiff-barreled pens claim against Good, Manning, and John Doe. *See Turner*, 376 F.Supp.2d at 324–25. However, a discrete complaint about the provision of pens by the Law Library and supply room cannot reasonably be construed as an allegation of wrongdoing by Larkin, Mazzuca, or Goord, and in the absence of any *Hemphill* exception, summary judgment is warranted in favor of these defendants and plaintiff's claims against them are dismissed with prejudice.

■ Finally, there is no dispute that Collins did not fully grieve the typewriter incident. (*See* Ex. C to Alderstein Decl.) However, plaintiff asserts that his failure to exhaust should be excused for two reasons. First, he claims that he attempted to "grieve the matter" at Oneida and was told by the facility's IGRC Supervisor to file and pursue an Inmate Claim Form and a Notice of Intention to File a Claim with the New York State Court of Claims, both of which he did. (Collins Opp'n Decl. ¶ 13; *see also* August 29 Inmate Claim Form)

Second, he alleges that he tried to file a formal grievance, but to obtain a grievance form (which was not available in the Law Library or housing unit), an Oneida inmate had to use an Inmate Request Slip, which was then "screened" by Oneida's IGRC Supervisor before a grievance could be filed. (*See id.* ¶ 13 n. 1) He contends that he provided such a slip to Oneida's IGRC Supervisor, but the Supervisor denied his claim and "[t]he facility I.G.R.C. declined to commence and process the grievance as consistent with its policy." (Collins Opp'n Mem. 1) Plaintiff's submissions, although not entirely clear, suffice at this early stage to defeat summary judgment. Specifically, Collins' difficulties raise a disputed question of material fact under *Hemphill* as to whether the IGP process was, in fact, "available" to him because (1) the IGRC Supervisor allegedly rejected his informal claim and would not allow him to file a formal grievance; (2) plaintiff could not obtain a grievance form in the library or housing unit; and (3) the IGRC itself would not "commence and process" whatever plaintiff did to dismiss where plaintiff's allegation that corrections officers failed to deliver his appeal "rendered DOCS grievance remedies unavailable"; *Pendergrass v. Sanney*, No. 01 Civ. 243A, 2004 WL 1946458, at *3 (W.D.N.Y. Aug.18, 2004) (rejecting motion to dismiss because plaintiff's mail tampering claims raised factual question as to whether plaintiff could use grievance process); *Wheeler v. Goord*, No. 03 Civ. A. 0787(NAM)(D), 2005 WL 2180451, at *6 (N.D.N.Y. Aug.29, 2005) (denying summary judgment where griev-

---

**15.** Defendants recognize that plaintiff appealed his pen-related grievance to the CORC (*see* Alderstein Decl. ¶ 4), but claim he failed to exhaust because "the grievance did not allege that [plaintiff] was consequently prejudiced in a legal proceeding [or] allege that the temporary provision of flexible-barreled pens was the result of deliberate and malicious conduct by the defendants ..." (Def. Mem. 18; Reply Mem. 6–8) However, this level of specificity is not required; a prisoner's grievance need only satisfy notice pleading and "object intelligibly to some asserted shortcoming." *Johnson*, 380 F.3d at 697 (*quoting Strong v. David*, 297 F.3d 646, 650 (7th Cir.2002)).

ance officer instructed inmate to write directly to sergeant rather than pursue grievance through IGP); *Pendergrass*, 2004 WL 1946458, at *2 n. 5 ("Where a prison fails to provide access to grievance forms, a prisoner's complaint cannot be dismissed for failure to exhaust.").[16] I do not read *Woodford* to foreclose an exception to the PLRA's exhaustion requirement where prison authorities actively obstruct an inmate's ability to "properly" file a prison grievance. Summary judgment therefore is denied as to plaintiff's typewriter claim.

## IV.

I turn now to plaintiff's exhausted claims and to defendants' motion to dismiss all of them as insufficient to warrant relief. *See Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004). Reading plaintiff's submissions liberally, I construe plaintiff's remaining allegations as asserting: (1) a denial of access to the courts claim arising out of the Erie County OTSC; (2) a denial of access to the courts claim arising out of the failure to provide stiff-barreled pens; (3) a denial of access to the courts claim arising out of the destruction of plaintiff's typewriter; (4) a due process claim arising out of the

destruction of plaintiff's typewriter; and (5) a First Amendment retaliation claim arising out of the destruction of plaintiff's typewriter. As explained below, I conclude that plaintiff has stated access to the courts and ·First Amendment retaliation claims against Manning, Good, and John Doe; all other claims are dismissed.[17]

## A. Denial of Access to the Courts

 Prisoners have a constitutional right of access to the courts that requires states "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." *Bounds v. Smith*, 430 U.S. 817, 822, 825, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). However, this right is not "an abstract, freestanding right to a law library or legal assistance" and cannot ground a Section 1983 claim without a showing of "actual injury." *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). To plead "actual injury," an inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* This actual injury requirement "is not satisfied by just any type of frustrated legal claim," because the Constitution guarantees only the tools that

---

**16.** Although plaintiff's allegations suggest an estoppel argument, it is appropriate to deny summary judgment on "availability" grounds because the officials who allegedly obstructed plaintiff's grievance are from a different facility (Oneida) than the defendants who allegedly damaged the typewriter (Fishkill). Thus, defendants played no role in the difficulties plaintiff encountered grieving the matter through Oneida's IGP. *See Hemphill*, 380 F.3d at 689 (suggesting that estoppel must be evaluated as to each defendant to discern what role, if any, each played in obstructing plaintiff's attempt to exhaust).

**17.** To the extent that plaintiff purports to bring any of his claims against defendants in their official capacities (*see, e.g.*, Am. Compl. ¶¶ I(a)—(c), these claims are dismissed.

Plaintiff may not seek money damages against the defendants in their official capacities because state employees are not subject to such suits.) *See Davis v. New York*, 316 F.3d 93, 101 (2d Cir.2002); *Cruz v. Gomez*, 202 F.3d 593, 595 n. 2 (2d Cir.2000) (*citing Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). Nor may he seek declaratory or injunctive relief against any defendant because his release from incarceration bars such claims. *See Dawes v. Walker*, 239 F.3d 489, 491 n. 2 (2d. Cir.2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Bodie v. Morgenthau*, No. 02 Civ. 7697, 2006 WL 357822, at *3 (S.D.N.Y. Feb. 12, 2006) (citing cases).

"inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355, 116 S.Ct. 2174. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355, 116 S.Ct. 2174.

### 1. *Copying of Erie County OTSC*

Collins first alleges denial of access to the courts arising out of the Law Library's denial of his requests for copies of his Erie County Article 78 OTSC. (Collins Opp'n Decl. ¶ 4) Collins claims that he conveyed his need for copies "in writing and verbally" to Manning, Good, and John Doe, and they "repeatedly" declined his requests. (Collins Opp'n Decl. ¶ 4) Although Manning and Good both maintained during the IGP process that they never received any request from Collins for a copying advance (*see* June 9 IGRC Response; June 15 Superintendent's Response), Collins demonstrates that, at the very least, he wrote the Law Library within days of receiving the OTSC to obtain copies pursuant to DOCS Directive No. 4483 (*see* April 18 Letter) and that an unidentified member of the Law Library, on at least one occasion, advised him that he needed to get an order from the Erie County Court (*see* April 21 Memorandum). It appears that this response prompted Collins to mail the OTSC to the Court on April 22 to ask either for an order or for the Court to copy and serve the OTSC for him. (*See* April 22 Letter) Although it is not clear what followed, plaintiff withdrew the OTSC on May 27 because he could not obtain the copies to serve it and his Erie County action was dismissed in November for failure to effect service. (*See* June 7 Grievance; Collins Opp'n Decl. ¶¶ 8–9)

■ As an initial matter, as some courts in this Circuit have concluded, *see Gittens v. Sullivan*, 670 F.Supp. 119, 122–23 (S.D.N.Y.1987), *aff'd*, 848 F.2d 389 (2d Cir. 1988); *Dugar v. Coughlin*, 613 F.Supp. 849, 853–54 (S.D.N.Y.1985); *Gill v. Pact Org.*, No. 95 Civ. 4510(LAP), 1997 WL 539948, at *4 (S.D.N.Y. Aug.28, 1997); *Ragland v. Keane*, No. 95 Civ. 4893(SHS), 1996 WL 655810, at *1 (S.D.N.Y. Nov.12, 1996), an inmate has no constitutional right to free copies and prison regulations that limit access to such copies are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Thus, Directive No. 4483, which states that an inmate without funds "may not receive photocopying services unless the Law Library Supervisor, in consultation with the Law Library Administrator or Counsel's Office, approves an encumbrance for the same" and that such encumbrances will be authorized only "for photocopies of specific documents that are required by the courts that cannot be replicated longhand," is constitutional. N.Y. DOCS Directive No. 4483 (Mar. 28, 2002).

■ Thus, plaintiff's claim turns on whether he has pleaded that defendants' application of this policy improperly "hindered his efforts to pursue a legal claim" and that defendants' actions caused him an "actual injury." *Lewis*, 518 U.S. at 351, 116 S.Ct. 2174; *see Gill*, 1997 WL 539948, at *4. As to the first issue, plaintiff has adequately alleged at this early stage that the library defendants obstructed his efforts to pursue his Erie County Article 78 petition. Plaintiff claims that he made repeated requests of Manning, John Doe, and Good for photocopies and defendants were precisely the individuals under Directive No. 4483 who could approve his request. The OTSC itself was clear on its face that Collins had to serve "a signed

and executed copy" of the OTSC (Order to Show Cause at 3), making it obvious that the order was a document that "[could] not be replicated longhand." DOCS Directive No. 4483. Directive No. 4483 does not state that inmates must procure a court order, and it is unclear what purpose such an order would serve where, as here, a plaintiff must serve an OTSC on an expedient basis to challenge the ongoing imposition of punitive SHU confinement. Although plaintiff's allegations may prove insufficient after discovery, they suffice to withstand dismissal at this stage.

 Collins has also pleaded "actual injury." His failure to obtain copies plainly prejudiced him in the Erie County action because he was forced to withdraw his OTSC and his Article 78 petition was dismissed for failure to effect service. (*See* June 7 Grievance; Collins Opp'n Decl. ¶¶ 8–9) The only question is whether an Article 78 proceeding is a type of action for which access to the courts is guaranteed, because "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis,* 518 U.S. at 354, 116 S.Ct. 2174. In *Lewis,* the Court noted that the access-to-courts cases preceding *Bounds* involved direct appeals from convictions and habeas corpus petitions, and that the Supreme Court had "extended this universe of relevant claims only slightly" to actions under Section 1983 and "felt compelled to justify even this slight extension of right of access to the courts." *Id.* (*citing Wolff v. McDonnell,* 418 U.S. 539, 579, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). Citing this language, at least one court in this district has suggested that the right of access might not extend to actions brought by inmates under Article 78. *See Brown v. Jacobson,* No. 98 Civ. 0565(LBS), 1999 WL 1125122, at *3 (S.D.N.Y. Dec.8, 1999). However, others have implicitly assumed without deciding that an Article 78 chal-

lenge can ground an access to courts claim. *See McCoy,* 255 F.Supp.2d at 260–61 (entertaining Article 78 access to courts claim but dismissing for failure to demonstrate actual injury); *Stubbs v. De Simone,* No. 04 Civ. 5755(RJH)(GWG), 2005 WL 1079286, at *12–*13 (S.D.N.Y. May 9, 2005) (same); *Sims v. Goord,* No. 01 Civ. 6187(CJS), 2005 WL 189721, at *4 (W.D.N.Y. Jan.25, 2005), *vacated on other grounds,* 151 Fed.Appx. 12 (2d Cir.2005) (entertaining Article 78 access to the courts claim but dismissing on other grounds).

I conclude that an Article 78 petition that challenges an inmate's remand to SHU confinement is an action for which access to the courts is constitutionally guaranteed. Enabling an inmate to file an Article 78 petition to challenge SHU detention does not implicate *Lewis'* concern about inmates "transform[ing] themselves into litigation engines capable of filing everything from shareholder derivative actions to slip and fall claims." *Lewis,* 518 U.S. at 355, 116 S.Ct. 2174. To the contrary, an Article 78 petition such as plaintiff's relates directly to the conditions of confinement, an area that *Lewis* repeatedly identified as warranting constitutional protection. *See id.* at 356, 116 S.Ct. 2174 (explaining that the "tools [*Bounds*] requires to be provided are those the inmates need in order to attack their sentences … and in order to *challenge the conditions of their confinement*") (emphasis added); *id.* at 356, 116 S.Ct. 2174 (noting that *Bounds* "confer[s] … the capability of bringing contemplated challenges to sentences *or conditions of confinement* before the courts") (emphasis added). Extending access-to-courts protection to Article 78 challenges to SHU confinement seems appropriate also because such confinement can implicate constitutionally protected liberty interests. *See generally Ortiz,* 380 F.3d at 654–55; *Palmer v. Rich-*

*ards,* 364 F.3d 60, 64–66 (2d Cir.2004); *Welch v. Bartlett,* 196 F.3d 389, 395 n. 4 (2d Cir.1999).

For all of these reasons, plaintiff has sufficiently alleged an access to the courts claim against Good, John Doe, and Manning based on the Erie County OTSC.

### 2. *Failure to Provide Stiff–Barreled Pens*

■■ The same cannot be said for plaintiff's claim arising out of the library defendants' failure to provide stiff-barreled pens. Collins' broad allegation that the lack of such pens hindered his efforts to pursue three of his lawsuits (*see* Collins Opp'n Decl. ¶¶ 10–11) is no substitute for the required showing of an "actual injury" in a specific legal action resulting from the alleged deprivation. *See, e.g., Odom v. Poirier,* No. 99 Civ. 4933(GBD), 2004 WL 2884409, at *9 (S.D.N.Y. Dec.10, 2004) (dismissing access to courts claim because "[p]laintiff's conclusory allegations that the defendants' caused him 'irreparable harm in his ability to litigate . . . state and federal claims . . .' or that 'the loss of [his] legal materials caused him irreparable harm to exercise his rights of access to the courts' are simply insufficient to state a claim"); *Gill,* 1997 WL 539948, at *5 (dismissing access to courts claim based on failure to provide photocopying and law books where plaintiff "offer[ed] no specific references to injury" and did not "explain any manner in which he or any of his claims were prejudiced"); *Ifill v. Goord,* No. 03 Civ. 355S, 2005 WL 2126403, at *8 (W.D.N.Y. Sept.1, 2005) (dismissing access to courts claim based on destruction of inmate's legal papers because inmate did not allege defendants "prevented him from filing a claim or responding to a dispositive motion, or caused him to miss a deadline or otherwise fail to comply with an order from any

court"). Collins' stiff-barreled pens claim is dismissed.

### 3. *Destruction of Typewriter*

Plaintiff's access to the courts claim arising out of the destruction of his typewriter (*see* Am. Compl. ¶ 12) fails also because plaintiff does not plead actual injury. To the contrary, plaintiff's multiple submissions in the present action (all typewritten) suggest that he has remained able to litigate his various lawsuits even after the typewriter's destruction. Without any allegation of a specific injury in a lawsuit for which access to the courts is guaranteed, his claim must be, and is, dismissed. *See, e.g., Odom,* 2004 WL 2884409, at *9; *Gill,* 1997 WL 539948, at *5; *Ifill,* 2005 WL 2126403, at *8.

### B. Typewriter Due Process Claim

■■ Plaintiff's attempt to fashion a due process claim out of the typewriter's destruction (*see, e.g.,* Collins Opp'n Mem. 3) fails also to state a claim. Even an intentional deprivation of an inmate's property that is random and unauthorized does not give rise to a due process claim so long as "adequate state post-deprivation remedies are available." *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). New York law provides such a remedy in the form of an action before the New York Court of Claims. *See* N.Y. Ct. Cl. Act § 9 (McKinney 1989 & Supp.2005); *Diaz v. Coughlin,* 909 F.Supp. 146, 150 (S.D.N.Y.1995) (dismissing property deprivation due process claim because inmate could bring action in Court of Claims); *McCorkle v. Juchenwicz,* No. 94 Civ. 6363(TPG), 1999 WL 163205, at *4 (S.D.N.Y. Mar.23, 1999) (same); *Gadson v. Goord,* No. 96 Civ. 7544(SS), 1997 WL 714878, at *7 (S.D.N.Y. Nov.17, 1997) (same); *Ifill,* 2005 WL 2126403, at *6 (same). Collins has filed precisely such an

action in the Court of Claims. (Collins Opp'n Decl. ¶ 13) Accordingly, his due process claim is dismissed.

## C. Typewriter First Amendment Retaliation Claim

■ Plaintiff's allegation that defendants destroyed his typewriter "as a form of retaliation for [his] legal activities" (Am. Compl.¶ 12) narrowly states a claim under the First Amendment. To survive dismissal, "a plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes v. Walker*, 239 F.3d 489, 492 (2d. Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Courts must "approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir.2003) (*quoting Dawes* 239 F.3d at 491); *see also Bennett*, 343 F.3d at 137; *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995).

■ Plaintiff has pleaded the first *Dawes* factor because a prisoner's filing of both lawsuits and administrative grievances is constitutionally protected. *See, e.g., Bounds*, 430 U.S. at 821, 97 S.Ct. 1491; *Davis*, 320 F.3d at 352–53; *Morales*, 278 F.3d at 131. I will assume also that the intentional destruction of plaintiff's typewriter—an instrument used for activities protected by the First Amendment—would constitute an adverse action if

proved. *See Smith v. City of New York*, No. 03 Civ. 7576(NRB), 2005 WL 1026551, at *3 (S.D.N.Y. May 3, 2005) (holding that destruction of plaintiff's legal papers and personal property was adverse action); *Soto v. Iacavino*, No. 01 Civ. 5850(JSM), 2003 WL 21281762, at *2 (S.D.N.Y. June 4, 2003) (holding that allegation that corrections officers deliberately destroyed inmate's property in retaliation for grievances stated viable claim).

The third *Dawes* factor—causal connection—presents a closer question. As defendants note, plaintiff's causal connection allegations are largely conclusory and his pleadings contain few, if any, specific facts relating to defendants' involvement in the typewriter's destruction. Nonetheless, this is a motion to dismiss, not one for summary judgment, and plaintiff need only meet the strictures of Fed.R.Civ.P. 8(a). The multiple and diverse forms of damage to the typewriter (*see* Am. Compl. ¶ 11) suggest malicious conduct by someone at Fishkill or Gowanda and support a reasonable inference that the individual or individuals responsible were retaliating against Collins for his filing of grievances and lawsuits. Because Collins was separated from the typewriter at the time of the damage and has not had the opportunity to conduct any form of investigation, he cannot be expected to identify the perpetrator. This does not mean that every Fishkill or Gowanda employee is a potential defendant; it does, however, enable Collins to state a claim against and seek discovery from officials to whom it would be reasonable to ascribe some retaliatory motive. This group plainly includes the library defendants, who, as the targets of plaintiff's Fishkill grievances, would have ample motive to damage a tool that could be used for additional grievances and lawsuits. (*See* Am. Compl. ¶ 10; Collins Mem. 1) However, the group does not

include Larkin, Mazzuca, or Goord; their connection to plaintiff's grievances is too attenuated to infer involvement in the typewriter's destruction. Plaintiff therefore states a claim against the library defendants alone.

### D. Supervisory Liability of Mazzuca and Goord

 Mazzuca and Goord move to dismiss on the alternative ground that Collins has failed to plead their "personal involvement" in any alleged constitutional violations. (Def.Mem.19–20) "[P]ersonal involvement of defendants in alleged constitutional violations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995) (*quoting Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994)); *see generally Colon*, 58 F.3d at 873 (setting out five-factor test for assessing supervisory official's personal involvement). Aside from the entirely conclusory allegation that Mazzuca and Goord were "aware of and acquiesced to the unlawful practices" (Compl.¶ V), Collins offers no factual allegations against Goord, assuming, erroneously, that his mere status as DOCS Commissioner is enough to sustain this claim. *See Colon*, 58 F.3d at 874 (dismissing claim against DOCS Commissioner because "[t]he bare fact that [he] occupies a high position in the New York prison hierarchy is insufficient to sustain [plaintiff's] claim"). As for Mazzuca, plaintiff offers no specific allegations, but his submissions suggest that Mazzuca's only involvement in plaintiff's exhausted claims consisted of affirming the Fishkill IGRC's denial of Collins' photocopying and stiff-barreled pens grievances. Such denials, standing alone, do not suffice to support Section 1983 liability. *See Joyner v. Greiner*, 195 F.Supp.2d 500, 506 (S.D.N.Y. 2002); *Madison v. Mazzuca*, No. 02 Civ. 10299(RWS), 2004 WL 3037730, at *10 (S.D.N.Y. Dec.30, 2004); *Ramsey v. Goord*, No. 05 Civ. 47A, 2005 WL 2000144, at *8–*9 (W.D.N.Y. Aug.13, 2005) (collecting cases). Therefore, plaintiff's claims against Goord and Mazzuca are dismissed on this ground as well.

### E. Qualified Immunity

Defendants argue that if plaintiff has stated a claim regarding any of his allegations, defendants are protected by qualified immunity. (*See* Def. Mem. 20–22). Under the qualified immunity doctrine, government officials performing discretionary functions are shielded from liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Where, as here, the court has already determined that a plaintiff has properly alleged constitutionally prohibited conduct, qualified immunity applies if either (1) the plaintiff's right not to be subjected to such conduct was not "clearly established" at the time of the conduct or (2) the defendant's challenged action was objectively reasonable in light of the legal rules that were clearly established at the time it was taken. *See Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir.2001); *X–Men Sec., Inc. v. Pataki*, 196 F.3d 56, 66 (2d Cir.1999). A court may extend qualified immunity on a motion to dismiss, but "the defense faces a formidable hurdle when advanced on such a motion," as "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 434, 436 (2d Cir.2004) (internal quotation marks omitted).

 A constitutional right is "clearly established" when (1) the law was defined

with reasonable clarity; (2) the Supreme Court or the Second Circuit has recognized the right; and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful. *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir.2003). Prior case law need not present fundamentally similar facts and "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 740–41, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

■ Turning to Collins' remaining claims, his right of access to the courts was established with sufficient clarity to put the library defendants on notice that actively hindering plaintiff's attempt to challenge his confinement to the SHU in court was unlawful. *See Bounds*, 430 U.S. at 828, 97 S.Ct. 1491 (holding that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers"); *Lewis*, 518 U.S. at 356, 116 S.Ct. 2174 (explaining that the "tools [*Bounds*] requires to be provided are those the inmates need in order to attack their sentences ... and in order to challenge the conditions of their confinement"); *id.* at 351, 116 S.Ct. 2174 (holding that inmate states a claim when he can "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim"). Similarly, Collins' right to be free from retaliation based on his exercise of First Amendment rights such as filing prison grievances was "clearly established" and had been affirmed repeatedly by the Court of Appeals. *See, e.g., Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir.2004);

*Davis*, 320 F.3d at 352–53; *Dawes*, 239 F.3d at 492.

■ Although defendants may be able to show that their conduct was nonetheless "objectively reasonable" on a more developed factual record, I cannot say that defendants have cleared the "formidable hurdles" they confront at this early procedural stage. *McKenna*, 386 F.3d at 434. Accepting plaintiff's allegations as true and drawing all reasonable inferences in his favor—including "those that defeat the immunity defense," *id.* at 436—it was not objectively reasonable for the library defendants intentionally to frustrate plaintiff's access to the courts by denying his initial requests for copies and requiring him to procure a court order to receive copies of a court-issued OTSC when DOCS regulations did not require such an order and the OTSC could not be copied longhand. Nor was it reasonable for defendants to damage Collins' typewriter to punish him for filing grievances and exercising his First Amendment rights. Defendants cannot benefit from qualified immunity at this time.

## V.

■ Finally, plaintiff moves pursuant to Fed.R.Civ.P. 15(a) [18] to amend his original and amended complaints to name defendant John Doe as "C.O. McConnell" ("McConnell"). Leave to amend under Rule 15(a) is to be "freely given" and a motion for leave should be granted in the absence of undue delay, bad faith, dilatory motive, repeated failure to cure, undue prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). An amendment is "futile" if the amended allegations could not withstand a

---

18. Collins purports to move also under Fed. R.Civ.P. 19(a), but that rule, which relates to compulsory joinder, has no relevance here. *See, e.g., Temple v. Synthes Corp.*, 498 U.S. 5, 8, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990) (explaining that "it has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit").

Rule 12(b)(6) motion to dismiss. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87–88 (2d Cir.2002). Here, all of Collins' claims against John Doe have been dismissed except for the access to courts claim arising out of the Erie County OTSC and the First Amendment retaliation claim related to plaintiff's typewriter. As to these two claims, amendment is not futile and the motion to amend is granted.

 \* \* \* \* \* \*

For the reasons set forth above, summary judgment is granted dismissing with prejudice all of plaintiff's claims for failure to exhaust except (1) his claims against Manning, Good, and John Doe arising out of the denial of photocopies to serve the Erie County OTSC and the failure to provide stiff-barreled pens; and (2) plaintiff's claim against all defendants relating to the destruction of his typewriter. I grant also defendant's motion to dismiss plaintiff's exhausted claims except the access to courts claim against Manning, Good, and John Doe arising out of the Erie County OTSC and the First Amendment retaliation claim against these defendants arising out of the destruction of plaintiff's typewriter. Plaintiff's motion to amend is granted with respect to these claims and McConnell is substituted for defendant John Doe.

 SO ORDERED.