**Andre EVANS, Plaintiff,**

v.

**G. MANOS, Sergeant at Southport Correctional Facility, B. Harvey, Doctor J. Alves, Defendants.**

**No. 01–CV–6607L.**

United States District Court, W.D. New York.

Sept. 23, 2004.

Andre Evans, Pine City, NY, pro se.

Gary M. Levine, Rochester, NY, for plaintiff/Defendant.

Marian Whitney Payson, Assistant Attorney General, Rochester, NY, for Defendant.

*DECISION AND ORDER*

LARIMER, District Judge.

Plaintiff, Andre Evans, appearing *pro se,* commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services, alleges that his constitutional rights were violated in a number of respects while he was confined at Southport Correctional Facility ("Southport") in 2001. Plaintiff has sued three defendants: Sergeant G. Manos, a correction officer at Southport; and Doctors John Alves and Burt Harvey, who at all relevant times were a physician and dentist, respectively, at Southport. Both sides have moved for summary judgment.

## BACKGROUND

The complaint alleges that Manos assaulted plaintiff on March 30, 2001. As a result of the assault, plaintiff sustained several injuries, including injuries to his teeth, jaw, and torso. Plaintiff states that he asked Manos to let him see a doctor and dentist, but Manos refused. Plaintiff submitted a number of written requests for medical and dental care, but they were denied.

Eighteen days after the alleged assault, plaintiff was seen by "the facility dentist" (presumably Dr. Harvey), Complaint § 6, who told plaintiff that he needed immediate surgery to remove one of his back teeth. Ten days later, the tooth was extracted. It is not entirely clear how plaintiff believes that Harvey violated plaintiff's rights, but it appears that he is alleging that the tooth could have been saved had plaintiff received treatment sooner.

Plaintiff also alleges that it "took [him] 30 days to see" Dr. Alves, and that when he did see Alves, Alves "terminated the visit without checking [plaintiff] because [plaintiff] questioned why it took so long for him to see [plaintiff]." *Id.* Plaintiff states that Alves then rescheduled his visit

for two weeks later, and that following that visit, Alves sent him to an outside hospital for x-rays.

Plaintiff's x-ray report, dated June 7, 2001, states that a "rib fracture is not identified," and that the radiologist "d[id]n't see any evidence for fracture." Alves Decl. (Docket # ) Ex. A at 27. The report also stated that the x-rays showed "mild levoscoliosis [curved spine] in the lumbar area," and that "[t]here may be minimal degenerative changes with osteophytes [bone spurs] arising from the anterior surfaces of the vertebral bodies at T12 and L1." *Id.*

Plaintiff filed a grievance with the Inmate Grievance Resolution Committee ("IGRC") on March 31, 2001. He stated in the grievance that Sgt. Manos had assaulted him, and that afterwards, plaintiff "asked several times to see the institutional nurse or doctor. I was denied medical treatment." James Meck Aff. (Docket # 33) Ex. A. He did not mention Drs. Alves or Harvey by name, however.

In a memorandum dated April 5, 2001, Inmate Grievance Program Supervisor James Meck informed plaintiff that his grievance had been received and forwarded to Southport's superintendent for review. While the grievance was pending, plaintiff sent a letter to the IGRC, dated April 19, 2001, complaining that he "ha[d] been trying to see the facility doctor" since March 30. *Id.* He stated that he had repeatedly put in for sick call, but that all that had happened was that he had been prescribed ibuprofen. He added, "How can the doctor prescribe anything for a patient, without examining the patient? ... Doctor, J. Alves, violated my 8th amendment constitutional rights, that guarantee against cruel and unusual punishment." *Id.*

On May 2, 2001, the superintendent issued a decision denying plaintiff's griev-

ance. The decision, bearing the caption "Assaulted by Sgt.—Denied Medical Care," stated that plaintiff "st[ood] by his allegation of having been assaulted by a sgt.," and that "the sgt. categorically denies the allegation." The superintendent concluded, "I find nothing to substantiate the grievant's allegations." *Id.*

## DISCUSSION

### I. Exhaustion of Administrative Remedies

Defendants contend that the complaint should be dismissed, at least as to Alves and Harvey,[1] for failure to satisfy the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). That statute provides that "[n]o action shall be brought with respect to prison conditions under [section 1983] of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

New York State regulations provide for a three-step administrative review process. See 7 N.Y.C.R.R. § 701.7. First, "an inmate must submit a complaint to the Grievance Clerk within 14 calendar days of an alleged occurrence .... " 7 N.Y.C.R.R. § 701.7(a)(1). The grievance is then submitted to the inmate grievance resolution committee ("IGRC") for investigation and review. If the IGRC's decision is appealed, the inmate may appeal to the superin-

tendent of the facility, and if the superintendent's decision is appealed, the Central Office Review Committee ("CORC") makes the final administrative determination. *See* 7 N.Y.C.R.R. § 701.7. In general, it is only after exhausting all three levels of the administrative review that a prisoner may seek relief pursuant to 42 U.S.C. § 1983 in federal court. *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001); *Santos v. Hauck,* 242 F.Supp.2d 257, 259 (W.D.N.Y.2003).

■ Based on the evidence before me, I find that plaintiff has failed to exhaust his administrative remedies as to defendant Harvey, and that Harvey is entitled to summary judgment. There is no mention of Harvey in plaintiff's grievance, nor any suggestion that plaintiff had received inadequate care from any facility dentist. The grievance alleges that plaintiff was prevented from receiving any medical treatment, but not that Harvey himself refused to see plaintiff, or that he saw plaintiff but failed to treat him properly. In addition, although in a letter to the IGRC dated April 3, 2001, plaintiff stated that his injuries included "three loose teeth," Meck Aff. Ex. A, plaintiff never indicated that he wanted to see a dentist specifically.

Court of appeals decisions from several circuits have yielded different results regarding whether an inmate may bring an action against an individual who was not named in the inmate's prison grievance.

---

1. Defendants concede that they are not entitled to summary judgment on exhaustion grounds as to defendant Manos. *See* Defendants' Memorandum of Law at 3. Although their motion is ostensibly brought on behalf of all three defendants, defendants raise no arguments concerning plaintiff's claims against Manos. To the extent that defendants' motion is brought on behalf of Manos, then, the motion is denied.

It is not clear if plaintiff, in his cross-motion for summary judgment, seeks summary judgment as to all the defendants, or only as to Alves and Harvey. In some respects, his motion papers seem to be more of a response to defendants' motion; even plaintiff's notice of motion states that "there exists a genuine issue" of fact. Docket # 45. To the extent that plaintiff seeks summary judgment as to Manos, however, the motion is denied. Plaintiff's claims against Alves and Harvey are discussed below.

*See Curry v. Scott,* 249 F.3d 493, 505 (6th Cir.2001) (holding that § 1997e(a) requires an inmate to name in his grievance each individual whom the inmate intends to sue); *Strong v. David,* 297 F.3d 646, 649–50 (7th Cir.2002) (holding that courts must look to the prison grievance system itself to determine what an administrative grievance must contain, and that where the administrative rules are silent on the issue, a grievance is sufficient if it alerts the prison to the nature of the wrong for which the inmate seeks redress); *Brown v. Sikes,* 212 F.3d 1205, 1207–08 (11th Cir. 2000) (holding that that § 1997e(a) requires an inmate to provide as much relevant information as is reasonably possible in the administrative grievance process). The Second Circuit has not yet decided the issue, but under any of the standards that other courts have adopted, plaintiff did not exhaust his administrative remedies as to Harvey. There is simply no suggestion anywhere in plaintiff's grievance that Dr. Harvey, or any dentist at Southport, had failed to provide him with adequate dental care.

Given the length of time that has elapsed since the incidents giving rise to this lawsuit, plaintiff is now barred from filing a grievance against Harvey. *See* 7 N.Y.C.R.R. § 701.7(a)(1) (inmate must submit grievance to the grievance clerk within fourteen calendar days of the alleged occurrence of the event upon which the grievance is based). The Court of Appeals for the Second Circuit has held that "dismissal with prejudice, when remedies are no longer available, is required 'in the absence of any justification for not pursuing [such] remedies.'" *Giano v. Goord,* 380 F.3d 670, 675, 2004 U.S.App. LEXIS 17235, at *11 (2d Cir. Aug. 18, 2004). Although the court has not yet set forth "any broad statement of what constitutes justification," *id.* 380 F.3d at 678, *21 (finding that inmate's failure to exhaust administrative remedies was justified by

his reasonable belief that certain DOCS regulations barred him from grieving matters relating to disciplinary proceedings), there is simply no basis here to conclude that plaintiff was "justified," for purposes of the PLRA exhaustion requirement, in omitting to name or refer to Dr. Harvey in his grievance.

▮ I reach a different conclusion as to Dr. Alves, however. Although Alves was not named in the original grievance dated March 31, 2001, plaintiff's April 19 letter to the IGRC plainly stated that "Doctor, J. Alves, violated [plaintiff's] 8th amendment constitutional rights . . . ." Plaintiff also explained the basis for that assertion: that Alves had simply prescribed ibuprofen without having examined plaintiff. Although plaintiff did not expressly allege that Alves had *refused* to see him, what is clear is that plaintiff brought his claims against Alves to the attention of the IGRC, while his grievance was still pending. The superintendent's report denying plaintiff's grievance made no mention of Alves (though it did recognize that plaintiff had alleged that he was "[d]enied [m]edical [c]are"), but certainly whether an inmate has exhausted his administrative remedies cannot depend on what the prison authorities did or did not do in response to his grievance; it is what the *inmate* does that counts. The IGRC could have treated plaintiff's April 19 letter as a new grievance, or as a supplement to his March 31 grievance, but they did neither. Defendants cannot now use DOCS's own failure to address plaintiff's allegations against Alves as a basis to assert that plaintiff failed to exhaust his administrative remedies. *See Abney v. McGinnis,* 380 F.3d 663, 667 (2d Cir.2004) (exhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies);

*Lyon v. Vande Krol,* 305 F.3d 806, 808 (8th Cir.2002) (where prison officials prevent or thwart a prisoner from utilizing an administrative remedy, they have rendered that remedy unavailable, and court will deem that procedure exhausted).

## II. Plaintiff's Claims Against Dr. Alves

### A. Eighth Amendment Claims: General Standards

■ To show that prison medical treatment was so inadequate as to amount to "cruel or unusual punishment" prohibited by the Eighth Amendment, plaintiff must prove that defendants' actions or omissions amounted to "deliberate indifference to a serious medical need." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Second Circuit has stated that a medical need is "serious" for constitutional purposes if it presents " 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.' " *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995)). *See also Harrison v. Barkley,* 219 F.3d 132, 136–137 (2d Cir.2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain' ") (quoting *Chance,* 143 F.3d at 702).

■ Among the relevant factors for determining whether a serious medical need exists are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance,* 143 F.3d at 702 (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir.1992), *overruled on other grounds,* *WMX Tech., Inc. v. Miller,* 104 F.3d 1133

(1997)). At the same time, however, "[a]n assertion of pain sensation alone, unaccompanied by any large medical complications, does not amount to a serious medical need under the Eighth Amendment." *Livingston v. Goord,* 225 F.Supp.2d 321, 329 (W.D.N.Y.2002) (quoting *Inciarte v. Spears,* No. 97 Civ. 3155(HB), 1998 WL 190279, *3 (S.D.N.Y. April 20, 1998)); *see, e.g., Zentmyer v. Kendall County, Ill.,* 220 F.3d 805, 810 (7th Cir.2000) ("Failure to 'dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue-the sorts of ailments for which many people who are not in prison do not seek medical attention-does not ... violate the Constitution' ") (quoting *Cooper v. Casey,* 97 F.3d 914, 916 (7th Cir.1996)).

■ As to the "deliberate indifference" component, the Supreme Court explained in *Wilson v. Seiter,* 501 U.S. 294, 298–99, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), that this standard includes both an objective and a subjective element. With respect to the objective aspect, the court must ask whether there has been a sufficiently serious deprivation of the prisoner's constitutional rights. With respect to the subjective component, the court must consider whether the deprivation was brought about by defendants in wanton disregard of those rights. *Id.* To establish deliberate indifference, therefore, plaintiff must prove that the defendant had a culpable state of mind and intended wantonly to inflict pain. *See Wilson,* 501 U.S. at 299, 111 S.Ct. 2321; *DesRosiers v. Moran,* 949 F.2d 15, 19 (1st Cir.1991); *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.), *cert. denied,* 506 U.S. 1040, 113 S.Ct. 828, 121 L.Ed.2d 698 (1992).

■ The Court in *Estelle* also cautioned that mere negligence is not actionable. "A [prisoner's] complaint that a physician has

been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106, 97 S.Ct. 285. Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind," *id.* at 102, 97 S.Ct. 285, or "incompatible with the evolving standards of decency that mark the progress of a maturing society," *id.* at 105–06, 97 S.Ct. 285. It is clear, then, that allegations of malpractice alone do not state a constitutional claim. *Id.* at 106 n. 14, 97 S.Ct. 285; *Chance*, 143 F.3d at 703–04; *Ross*, 784 F.Supp. at 44.

■ Likewise, an inmate's "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703; *see also Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir.1977) ("The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion").

## B. Application to this Case

Plaintiff alleges in the complaint that

[i]t took [plaintiff] 30 days to see the doctor and when [plaintiff] did [see Dr. Alves] terminated the visit without checking [plaintiff] because [plaintiff] questioned why it took so long for him to see [plaintiff]. [Dr. Alves] then rescheduled [plaintiff] to see him 2 weeks later, at this time he put [plaintiff] in to see the outside hospital for x-rays.

In his declaration in support of his motion for summary judgment, Alves states that he saw plaintiff on April 30, 2001, nine days after plaintiff was placed on the doctor callout list. Alves states that "[p]lain-

tiff was angry, uncooperative, argumentative and belligerent and therefore sick call was terminated." Docket # 47 ¶ 6. Alves states that he next saw plaintiff on May 21, 2001. Based on his examination of plaintiff, and plaintiff's claims of extreme pain even when Alves only lightly touched his lower back, Alves believed that plaintiff was malingering. Alves did prescribe pain medication, though, and also ordered x-rays of plaintiff's back and ribs. X-rays were taken on June 17, 2001, and showed no fractures.

Alves states that plaintiff's complaints of back pain were not sufficiently serious to warrant an expedited appointment, and that the nine-day delay between being placed on the callout list and plaintiff's initial visit was a normal delay. Alves also states that any delay in seeing plaintiff was not done with the intent to harm him, and that in fact plaintiff did not suffer any harm from the delay. Alves states that the "only difference in treatment was a change in the pain medication." Alves Decl. (Docket # 48) ¶ 13.

Alves does not state what the change in medication was, but plaintiff's medical record indicates that facility nurses directed that plaintiff be given Advil, and on some occasions Motrin, for his complaints of pain stemming from the alleged assault by Manos. *See* Alves Decl. Ex. A at 7, 8, 13, 16. The record also shows that on May 21, Alves prescribed naproxen. *Id.* at 19. There does not appear to be any indication that plaintiff's course of treatment changed after his x-ray report was received.

Plaintiff's allegations against Alves are most fully set forth in his deposition testimony. He stated that when he first saw Alves on April 30, plaintiff "questioned the delay why it took 30 days to see him when [plaintiff] was going through excrutiating pain which is cruel and unusual punishment. And [Alves] said, 'I don't want to

hear that, get the hell out of my office.'" Levine Decl. (Docket # 46) Ex. A at 40. Plaintiff denied that he was argumentative or belligerent toward Alves. *Id.* at 40–41.

Plaintiff testified that when he next saw Alves on May 21, Alves did examine him. Plaintiff stated that Alves ordered that he be taken to an outside hospital for x-rays, and that Alves prescribed either naproxen or Motrin for pain relief. *Id..* at 42. That was the last time that plaintiff saw Alves. *Id.*

Plaintiff also testified that his claim against Alves was based on the delay in Alves's examination and treatment of plaintiff, and because Alves "turned a blind eye to [plaintiff's] injury." *Id.* at 45. Plaintiff stated that he "was telling [Alves], 'Listen, I have a back injury, it is killing me, you know, I need medical attention, I cannot use Advil.' [Alves] was prescribing [plaintiff] Advil without even seeing [plaintiff]." *Id.* Plaintiff testified that the Advil was inadequate to relieve his pain, and that, in his opinion, he "should have been given a back brace." *Id.* at 47. Plaintiff asserted that "[i]f[Alves] would have seen [plaintiff sooner], he would have detected [plaintiff's] injuries and whatever that was required for him to do as a medical professional, that's what he would have prescribed, that's what he would have done for [plaintiff]." *Id.* at 49.

■ Viewing this evidence in the light most favorable to plaintiff, I find that Alves is entitled to summary judgment. "Although a delay in medical care can demonstrate deliberate indifference to a prisoner's medical needs, a prisoner's Eighth Amendment rights are violated only where 'the delay reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment.'" *Rodriguez v. Ames,* 224 F.Supp.2d 555, 561 (W.D.N.Y.2002) (quoting *Rodriguez v. Mercado,* 2002 WL 1997885, at *9 (S.D.N.Y. Aug. 28, 2002)) (citation omitted). In addition, delay alone will not give rise to a constitutional claim unless the delay causes substantial harm. *See Napier v. Madison County, Kentucky,* 238 F.3d 739, 742 (6th Cir. 2001) (in order to show a constitutional violation based on an alleged delay in treatment, prisoner must place verifying medical evidence in the record establishing the detrimental effect of the delay); *Sealock v. Colorado,* 218 F.3d 1205, 1210–11 (10th Cir.2000) (holding that "[d]elay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm"); *Wood v. Housewright,* 900 F.2d 1332, 1335 (9th Cir.1990) (only delays that cause substantial harm violate the Eighth Amendment); *Vester v. Price,* 2003 WL 22016942, at *3 (N.D.Tex. Aug. 26, 2003) ("Plaintiff has alleged no fact to indicate he suffered substantial harm, or any harm at all, as a result of the claimed delay. His claim, therefore, lacks an arguable basis in law ..."); *Ruiz v. Homerighouse,* 2003 WL 21382896, at *3 (W.D.N.Y. Feb. 13, 2003) ("Ruiz's unsubstantiated claim that the one-week delay caused a degeneration in his condition is inadequate to bar summary judgment").

Here, plaintiff has not identified anything that Alves could or should have done had he examined plaintiff sooner, nor has he shown that he was harmed by any delay in treatment. The record shows that, following the incident with Manos, plaintiff was given pain relievers both before and after he was seen by Alves on May 21.[2] In

---

2. Although Alves switched plaintiff from Advil and Motrin to naproxen, there is no indication in the record that this made any significant difference in plaintiff's condition, or that

addition, the x-rays were negative, and there is no evidence that the x-ray results led, or should have led, Alves to alter plaintiff's course of treatment.

Plaintiff's own opinion that Alves should have prescribed a back brace is also inadequate to give rise to any issue of fact about whether his constitutional rights were violated. There is no medical evidence that a back brace was medically called for or that it would have relieved plaintiff's alleged pain. *See Jennings v. Al–Dabagh,* 275 F.Supp.2d 863, 871 (E.D.Mich.2003) (plaintiff's personal opinion that his care was substandard did not raise Eighth Amendment issue), *aff'd,* 97 Fed.Appx. 548, 2004 WL 957817 (6th Cir.2004); *Rogers v. Denkler,* 2001 WL 902554, at *3 (N.D.Cal. Aug. 2, 2001) ("Other than his own personal opinion, which is insufficient to establish Dr. Denkler's deliberate indifference, plaintiff does not provide any evidence that Dr. Denkler's [treatment] was medically unacceptable") (citation omitted); *Tucker v. Quinlan,* 748 F.Supp. 32, 33 (D.D.C. 1990) (plaintiff's personal opinion that his knee required surgery was insufficient to support an Eighth Amendment claim). A mere difference of opinion between the inmate and his physician over the proper course of treatment is not enough to give rise to a constitutional claim. *Chance,* 143 F.3d at 703.

Furthermore, there is no evidence here that would support a finding in plaintiff's favor as to the subjective component of an Eighth Amendment claim. There is no evidence that Alves intended to cause plaintiff to suffer unnecessary pain. Even if Alves arguably acted hastily, or overreacted, by terminating plaintiff's first visit when plaintiff began complaining about the delay in seeing him, that does not show that Alves had a culpable state of mind for

Eighth Amendment purposes. Alves's actions hardly amount to conduct that is "repugnant to the conscience of mankind," which is necessary to make out a claim under the Eight Amendment. *Estelle,* 429 U.S. at 102, 97 S.Ct. 285.

## CONCLUSION

Defendants' motion for summary judgment (Docket # 45) is granted in part and denied in part. Defendants' motion is granted as to plaintiff's claims against defendants J. Alves and B. Harvey, and plaintiff's claims against those two defendants are dismissed. In all other respects, the motion is denied.

Plaintiff's cross-motion for summary judgment (Docket # 51) is denied.

IT IS SO ORDERED.

---

one pain reliever was necessarily more effective than another. I note that a nurse had previously directed to take 600 mg of Motrin

three times a day, and that Alves prescribed 375 mg of naproxen thrice daily. Alves Decl. Ex. A at 8, 19.