**James J. MORAN, Plaintiff,**

v.

**Donald LIVINGSTON, et al., Defendants.**

**6:10–CV–6178 EAW**

United States District Court, W.D. New York.

Signed 01/06/2016

Filed 01/07/2016

James J. Moran, West Seneca, NY, pro se.

Shawn P. Hennessy, Brian R. Liebenow, Buffalo, NY, for Defendants.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, United States District Judge

## INTRODUCTION

Plaintiff James Moran ("Plaintiff"), appearing *pro se*, was detained first at the Erie County Holding Center ("ECHC") and then at the Erie County Correctional Facility ("ECCF") at all times relevant to the allegations in his complaint. Plaintiff commenced this action on March 29, 2010, pursuant to 42 U.S.C. § 1983, alleging that Defendants, employees of ECHC and ECCF, violated his constitutional rights. (Dkt.1). In his second amended complaint, Plaintiff specifically alleges that Defendants were deliberately indifferent to his medical needs, exposed him to unsanitary conditions of confinement, and violated his First Amendment rights, all in violation of the First, Fifth, Eighth, and Fourteenth Amendments. (Dkt.50). Plaintiff claims that he contracted Methicillin-resistant Staphylococcus aureus ("MRSA") while he was housed at ECHC and did not receive

proper attention or medical care at ECHC or ECCF. (*Id.*).

Presently before the Court is Defendants' motion for summary judgment. (Dkt.83). Plaintiff has not responded to the motion, despite being warned of the consequences for his failure to do so. For the following reasons, Defendants' motion is granted.

## BACKGROUND

Plaintiff commenced the instant action on March 29, 2010. (Dkt.1). On June 16, 2010, the Court granted Plaintiff's application to proceed *in forma pauperis.* (Dkt.5).. Plaintiff filed an amended complaint on July 19, 2010 (Dkt.6), and Defendants answered the complaint on April 15, 2011 (Dkt.8). Plaintiff filed a second amended complaint on June 25, 2013 (Dkt.50), and Defendants answered the complaint on August 5, 2013 (Dkt.51). Plaintiff's second amended complaint is the operative pleading in this matter. (Dkt.50). The parties engaged in discovery, and Defendants filed a motion for summary judgment on July 23, 2015. (Dkt.83).

On July 23, 2015, the Court entered a scheduling order requiring Plaintiff to file a response to the motion no later than August 21, 2015. (Dkt.84). Plaintiff was advised in this order that "[t]he claims Plaintiff asserts in his complaint may be dismissed without a trial if he does not respond to this motion by filing his own sworn affidavits and other papers as required by Fed. R. Civ. P. 56(c)." (*Id.*). To date, Plaintiff has failed to file responsive papers in accordance with the Court order and has not communicated with the Court to request an extension of time.

## DISCUSSION

### I. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judg-ment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.'* " *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec.,* 475 U.S. at 586–87, 106 S.Ct. 1348) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

Federal Rule of Civil Procedure 56 provides that a party may not oppose summary judgment simply by relying upon the allegations in the complaint. Fed. R. Civ. P. 56(c)(1). Rather, the party must submit evidence, such as witness statements or documents, countering the facts asserted and raising issues of fact for trial. *Id.* If the party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may consider the fact undisputed and may "grant summary judgment if the motion

and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

Further, the Local Rules of Civil Procedure state that "[e]ach numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." L.R. Civ. P. 56(a)(2).

"The Court of Appeals for the Second Circuit has held that when a party moves for summary judgment against a *pro se* litigant, either the movant or the district court must provide the *pro se* litigant with notice of the consequences of failing to respond to the motion." *Gustin v. Potter,* 474 F.Supp.2d 460, 462 (W.D.N.Y.2007); *see Irby v. New York City Transit Auth.,* 262 F.3d 412, 413 (2d Cir.2001).

However, even where such notice has been given, "failure to oppose or respond to a motion for summary judgment standing alone does not warrant granting the motion: 'the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law.'" *Devers v. Goord,* No. 06–CV–843S, 2014 WL 4923284, at *4 (W.D.N.Y. Sept. 30, 2014) (quoting *Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir.2004)).

Here, both Defendants' notice of motion (Dkt.83) and this Court's scheduling order (Dkt.84) put Plaintiff on notice of the requirements of Rule 56 and the potential consequences of failing to respond to Defendants' motion for summary judgment. The notice of motion, in bold typeface, states: **"Failure to Respond to This Motion For Summary Judgment May Result in The Grant of Judgment in Favor of The Party Seeking Summary Judgment and The Dismissal of All or Part of The Case."** (Dkt. 83 at 4). Similarly, this Court's scheduling order states: "THE CLAIMS PLAINTIFF ASSERTS IN HIS COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF HE DOES NOT RESPOND TO THIS MOTION by filing his own sworn affidavits and other papers as required by Fed. R. Civ. P. 56(c)." (Dkt. 84 at 1). The scheduling order further explains that a plaintiff may not oppose summary judgment by simply relying on the allegations in the complaint and lists the papers that must be submitted in accordance with federal and local rules of civil procedure. (*Id.* at 1–2). Accordingly, Plaintiff was provided with adequate notice of his obligation to respond to Defendants' motion and the consequences of failing to do so.

Because Plaintiff failed to respond to Defendants' motion for summary judgment, "the Court will not simply grant defendants' motion automatically, but will accept the truth of defendants' factual allegations, and determine whether defendants are entitled to summary judgment." *Allaway v. McGinnis,* 473 F.Supp.2d 378, 381 (W.D.N.Y.2007).

## II. Admissibility of the Evidence

■ "Materials submitted in support of or in opposition to a motion for summary judgment must be admissible themselves or must contain evidence that will be presented in admissible form at trial." *Delaney v. Bank of Am. Corp.,* 766 F.3d 163, 169–70 (2d Cir.2014) (quotation omitted); *see also* Fed. R. Civ. P. 56(c). " '[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment,' and the Federal Rules of Evidence govern such admissibility." *Jackson v. Fed. Express,* 766 F.3d

189, 194 (2d Cir.2014)) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 56 (2d Cir.1997)).

### A. Medical Records

■ In support of the summary judgment motion, Defendants rely, in part, on documents purporting to be Plaintiffs medical records. Although medical records constitute hearsay, they "can be admissible under Federal Rule of Evidence 803(6), provided they are prepared in the regular course of business, near the time of occurrence, by a person with knowledge and are properly authenticated." *Hodges v. Keane*, 886 F.Supp. 352, 356 (S.D.N.Y. 1995). "Facts supporting admissibility must be supplied 'by the testimony of the custodian or other qualified witness or by certification' that complies with Federal Rule of Evidence 902." *Shells v. Flynn*, No. 9:06–CV–407, 2009 WL 2868215, at *2 n. 2 (N.D.N.Y. Sept. 2, 2009) (quoting Fed. R. Evid. 803(6)).

Here, to introduce the medical records, Defendants provide the declaration of Dr. Thomas Raab, a physician licensed to practice medicine in New York who is Board Certified by the American Board of Internal Medicine. (Dkt.83–6). Dr. Raab specializes in infectious diseases and is offered as an expert witness. Dr. Raab attaches Plaintiff's medical records from his incarceration at both the Erie County Correctional Facility and Erie County Holding Center. (*Id.* at ¶ 3). However, this declaration does not lay the proper foundation for the admissibility of Plaintiff s medical records. Dr. Raab does not provide the information required to support admissibility of the records under Federal Rule of Evidence 803 because he does not claim to be a records custodian for the documents and did not personally keep the medical records. Further, the records have not been certified in compliance with Federal Rule of Evidence 902(11). Accordingly,

the records are not properly part of the record before this Court on the summary judgment motion. *See Tutora v. Corr. Med. Care, Inc.*, No. 9:10–CV–0207 (MAD/ TWD), 2012 WL 1898871, at *2 (N.D.N.Y. Apr. 30, 2012) (declining to consider various facility and medical records in an inmate case where the records, supplied by the defendants, were not supported by any custodial affidavit or certified); *Goris v. Breslin*, No. 04–CV–5666 (KAM)(LB), 2010 WL 376626, at *1 n. 1 (E.D.N.Y. Jan. 26, 2010), *aff'd*, 402 Fed.Appx. 582 (2d Cir.2010) ("Plaintiff's DOC medical records may be admissible under the business records exception to the hearsay rule.... Neither party has supplied an affidavit containing facts supporting admissibility of the plaintiff's medical records, nor have the records been certified in a manner compliant with Fed. R. Evid. 902(11); therefore, the records are not technically admissible."); *Gissinger v. Yung*, No. (BMC)(JO), 2007 WL 2228153, at *4 (E.D.N.Y. July 31, 2007) ("The business records exception to the hearsay rule does not permit the Gissingers to have Dr. Sasson serve as a conduit for the unauthenticated records purportedly kept by other, non-testifying, doctors."). *Cf. Norcia v. Dieber's Castle Tavern, Ltd.*, 980 F.Supp.2d 492, 502 (S.D.N.Y.2013) ("The Court also finds that Plaintiffs medical records and bills from Westchester Medical Center were properly authenticated, because Plaintiff provided the Court with subpoenaed copies of them, accompanied by a certification signed by the Center's Medical Records Supervisors....").

### B. Raab Declaration

■ Dr. Raab offers his opinions concerning Plaintiffs medical treatment based, in part, on the contents of the medical records referenced above. Even though the records themselves have not been properly admitted, "an expert may rely on

data that she did not personally collect. The Federal Rules of Evidence specifically provide that an expert may rely on facts or data 'perceived by *or* made known to the expert at or before the hearing.'" *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94–95 (2d Cir.2000) (quoting Fed. R. Evid. 703) (emphasis in original). *See Gissinger*, 2007 WL 2228153, at *5 ("Dr. Sasson relied upon the medical records kept by other non-testifying doctors to form his own opinion of Mr. Gissinger's medical condition and prognosis and that opinion is plainly admissible evidence. Further, because he explicitly stated that he relied on the medical records at issue, to the extent that Dr. Sasson's testimony recounts the contents of those medical records, that testimony is admissible. However, Dr. Sasson's testimony cannot form a basis for admitting into evidence the records themselves, because such records are hearsay.") (citations omitted); *Jackson v. Greyhound Lines, Inc.*, No. 96 Civ. 743 1(JGK), 1998 WL 355423, at *3 (S.D.N.Y. July 2, 1998) ("The defendants argue that medical records used by Dr. Weisman in his examination are inadmissible hearsay and as such may not be considered on this motion. However, an expert may rely on records that would be inadmissible in court if the records are of a kind relied on by experts in the same field.") (citing Fed. R. Evid. 703).

In other words, the Court will consider Dr. Raab's uncontroverted expert opinion concerning the care and treatment Plaintiff received, even though those opinions are based, in part, on the medical records.

### C. Plaintiffs Deposition Testimony

Affixed to the transcript of Plaintiffs deposition testimony is a notarized statement by the Court Reporter, Nichole Kyre, certifying that the transcript "constitutes a true and accurate and complete transcript of the testimony" of Plaintiff James Moran. (Dkt. 83–3 at 45). Because this notarized statement authenticates the document in accordance with Federal Rule of Evidence 902, the Court will consider Plaintiffs deposition testimony.

### D. Usinski Declaration

Under the Federal Rules of Civil Procedure, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c).

In his declaration, Defendant Joseph Usinski makes statements concerning his direct, personal knowledge of the filing of Plaintiff's August 11, 2008 grievance. (Dkt. 83–7 at ¶¶ 2–6). Accordingly, the Court considers the declaration of Defendant Usinski.

### III. Erie County Holding Center and Erie County Correctional Facility

■ As an initial matter, Plaintiff's claims against ECHC and ECCF must be dismissed because each of these departments is an administrative arm of the County, and therefore they lack the capacity to be sued. *See McKenzie v. Cnty. of Erie*, No. 12–CV–912S, 2013 WL 5348084, at *2 (W.D.N.Y. Sept. 23, 2013); *see also Tulloch v. Erie Cnty. Holding Ctr.*, No. 10–CV–0207S, 2010 WL 2609054, at *2 (W.D.N.Y. June 24, 2010) ("[C]laims against the Erie County Holding Center must be dismissed because [ ] the Erie County Holding Center is merely an arm of the County, and does not have a legal identity separate and apart from the County and thus cannot be sued...").

## IV. Deliberate Indifference Claims

Plaintiff alleges that Defendants have subjected him to cruel and unusual punishment in deliberate indifference to his serious medical needs. (Dkt.50). Defendants argue that Plaintiff did not suffer a serious medical need, and even if he did, Defendants were not deliberately indifferent to Plaintiff's needs. (Dkt. 83–1 at 4–9).

■ "While the Eighth Amendment protects incarcerated prisoners from cruel and unusual punishment in the form of inadequate medical care, the Due Process Clause of the Fourteenth Amendment protects pretrial detainees from inadequate medical care by the state." *Thomas v. Nassau Cnty. Corr. Ctr.*, 288 F.Supp.2d 333, 337 (E.D.N.Y.2003). "The standard for analyzing a pre-trial detainee's Fourteenth Amendment claim is the same as the Eighth Amendment standard." *Id.* (quotation omitted).[1]

■ In order to successfully substantiate a claim for medical indifference, the plaintiff must prove that a defendant was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). This analysis contains an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298–99, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

■ Objectively, a medical need is serious for constitutional purposes if it presents " 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.' " *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994), *cert. denied*, 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995)).

"There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition."

---

1. The Supreme Court, in *Kingsley v. Hendrickson*, —— U.S. ——, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015), held that a pretrial detainee asserting an excessive use of force claim under the Fourteenth Amendment need only meet an objective standard by showing "that the force purposely or knowingly used against him was objectively reasonable." *Id.* at 2473. By contrast, a convicted inmate claiming excessive use of force under the Eighth Amendment must additionally meet a subjective standard by demonstrating that the force was applied "maliciously and sadistically to cause harm," and not "in a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The decision in *Kingsley* only expressly dealt with an excessive use of force claim, and existing Second Circuit precedent requires a pretrial detainee to establish both subjective and objective elements to support a claim for deliberate indifference to medical needs under the Fourteenth Amendment. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996); *see also Roberts v. C–73 Med. Director*, No. 1:14–cv–5198–GHW, 2015 WL 4253796, at *3 n. 3 (S.D.N.Y. July 13, 2015) ("The decision in *Kingsley* dealt only with excessive force claims, thus the Court continues to abide by Second Circuit precedent setting forth a subjective standard for cases involving allegations of deliberate indifference to a pretrial detainee's serious medical needs, which is identical to the standard for convicted prisoners under the Eighth Amendment."). To date, the Second Circuit has declined to expressly address whether the deliberate indifference standard has changed for pretrial detainees in light of the *Kingsley* decision. *See Ross v. Correction Officers John & Jane Does 1–5*, 610 Fed.Appx. 75, 76 (2d Cir.2015) ("Because our focus, in analyzing whether qualified immunity applies, is on whether the right asserted by Ross was clearly established at the time of the alleged violation, we need not address *Kingsley's* possible implication for deliberate indifference claims brought by pre-trial detainees."). As a result, the Court will follow existing Second Circuit precedent and analyze Plaintiff's deliberate indifference claims under both a subjective and objective standard.

*Brock v. Wright,* 315 F.3d 158, 162 (2d Cir.2003). However, the Second Circuit Court of Appeals has presented the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *Chance,* 143 F.3d at 702).

"We do not … require an inmate to demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do we require a showing that his or her condition will degenerate into a life-threatening one." *Id.* at 163. "At the same time, however, '[a]n assertion of pain sensation alone, unaccompanied by any large medical complications, does not amount to a serious medical need under the Eighth Amendment.'" *Evan v. Manos,* 336 F.Supp.2d 255, 260 (W.D.N.Y. 2004) (quoting *Livingston v. Goord,* 225 F.Supp.2d 321, 329 (W.D.N.Y.2002)).

"Subjectively, the official charged with deliberate indifference must have acted with the requisite state of mind, the 'equivalent of criminal recklessness.'" *Lapierre v. Cnty. of Nassau,* 459 Fed. Appx. 28, 29 (2d Cir.2012) (quoting *Hathaway,* 99 F.3d at 553). Specifically, a plaintiff must prove that the prison official knew of a serious medical condition and nonetheless disregarded the plaintiff's medical needs. *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970 (holding that a prison official does not act in a deliberately indifferent manner towards an inmate unless he "knows of and disregards an excessive risk to inmate health or safety"); *see also Beaman v. Unger,* 838 F.Supp.2d 108, 110 (W.D.N.Y.2011) ("To establish deliberate indifference … [a] plaintiff must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain.").

More than medical malpractice is required to establish a constitutional violation. "Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness…." *Hill v. Curcione,* 657 F.3d 116, 123 (2d Cir.2011). Similarly, mere negligence is not actionable. "A [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle,* 429 U.S. at 106, 97 S.Ct. 285.

Consistent with those principles, "[i]t has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." *Hill,* 657 F.3d at 123). "[M]ere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance,* 143 F.3d at 703.

## A. Objective Test—Serious Medical Need

According to Plaintiff, he contracted Methicillin-resistant Staphylococcus aureus ("MRSA") as a result of the "deplorable condition of the intake holding cells" at ECHC. (Dkt. 50 at 3–4).

During his deposition, Plaintiff described his first symptom as follows:

It was directly below my belly button and it was like a pinhead. It was kind of peculiar, it was weird, almost like it was a burn or something. It looked like a blister. It was kind of weird, that's what drew my attention to it. It was

growing at a rapid rate though because by the next day when I was transferred to the Erie County Correctional Facility it was already larger and it was clear and it had a liquid substance in it.

(Dkt. 83–3 at 25:18–23–26:1–4). Plaintiff testified that as his condition worsened, the sores created "holes" in his skin that were "oozing out pus" and were "very, very painful." (*Id.* at 29:10–17). Plaintiff stated that he informed an intake nurse at ECCF on August 4, 2008 that he had a "blister or a boil" on his stomach, and that the nurse indicated in sum and substance that Plaintiff only noticed it because he was incarcerated and that he would not have noticed it if he was not incarcerated. (*Id.* at 30:17–23–31:1–6). Plaintiff claimed that the "holes" spread "at a rapid rate" to his left arm, both knees, his left rib, and his stomach." (*Id.* at 32:15–23–33:1).

Plaintiff testified that on August 9, 2008, the medical staff at ECCF examined the blisters on his body. (*Id.* at 30:17–23–31:1–6). Plaintiff acknowledged that the medical staff at the correctional facility indicated that there was no discharge from his sores. (*Id.* at 33:12–16). He testified that he was "receiving antibiotics as of the 9th . . . ." (*Id.* at 31:22–23–32:1–7). Plaintiff testified that he was diagnosed with MRSA when he went to Kenmore Mercy Hospital upon his release from ECCF, on or about August 21, 2008. (*Id.* at 36:5–22).

Defendants argue that Plaintiff was never formally diagnosed with MRSA, and "simply did not suffer any serious injury of a constitutional magnitude, requiring dismissal of his claim." (Dkt. 83–1 at 7–8). Dr. Raab opines that it is far from clear that Plaintiff even suffered from MRSA. (Dkt. 83–6 at ¶ 10).

The Court need not resolve whether there are issues of fact concerning the objective element of Plaintiff s deliberate indifference claim because, as discussed below, there is no disputed material fact with respect to the subjective element.

## B. Subjective Test—Deliberate Indifference

 There is no question of material fact with respect to whether Defendants were deliberately indifferent to Plaintiff's serious medical needs.

Plaintiff alleges that he was seen by nurses at ECCF on August 4, 2008, upon intake at the facility. (Dkt. 50 at ¶ 8). Plaintiff alleges that he informed Defendant Posllaszny of a "small abscess" on his abdomen, but that another nurse did not note the concern on Plaintiff's medical chart, and that Defendant Corinnes told Plaintiff in sum and substance that the abscess was "because [he was] in jail." (*Id.*). Plaintiff states that he complained daily to the nurses about his condition and was told to put a hot compress on the abscess and keep it covered. (*Id.* at ¶ 9). However, Plaintiff claims that he was not provided with a hot compress or bandages. (*Id.*).

Plaintiff further claims that by August 6, 2008, the "hole grew larger and spread to [his] knees, arms, and left ribcage." (*Id.* at ¶ 10). Plaintiff was examined by medical staff on August 8, 2008. (*Id.* at ¶ 14). According to Plaintiff, when Defendant Lebowitz, a doctor, examined Plaintiff's stomach, he prescribed Plaintiff an antibiotic, Bactrim, for seven days. (*Id.*).

On August 9, 2008, Plaintiff claims he asked Defendant Posllaszny for various medical tests to determine a diagnosis and was informed that a culture could not be done because the sores had no drainage. (*Id.* at ¶ 15). Plaintiff contests this finding and claims that "puss was visible in the open wounds." (*Id.*). Specifically, Plaintiff alleges that he raised his concern that he had MRSA at this time, and that Defendant Posllaszny told him he had no under-

standing of MRSA. (*Id.*). Plaintiff claims that Defendant Posllaszny again refused Plaintiff's request for a culture on August 13, 2008. (*Id.*).

Plaintiff alleges that he approached Defendant Usinski on August 9, 2008, in front of three inmate witnesses, to raise concerns about his medical condition. (*Id.* at ¶ 19). According to Plaintiff, Defendant Usinski stated "if you have a problem with medical sue medical." (*Id.*).

 It is well-established that "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance,* 143 F.3d at 703. "Nor does the fact that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred." *Joyner v. Greiner,* 195 F.Supp.2d 500, 504–05 (S.D.N.Y.2002). "Determinations made by medical providers within their discretion are given a presumption of correctness when it concerns the care and safety of patients." *Mendoza v. McGinnis,* No. (TJM/DEP), 2008 WL 4239760, at *11, 2008 U.S. Dist. LEXIS 110057, at *11 (N.D.N.Y. Sept. 11, 2008) (internal quotation omitted).

Here, even according to Plaintiffs version of events, he was provided with medical attention for his complaints, and by August 9, 2008, he had been prescribed antibiotics. (Dkt. 50 at ¶ 14; Dkt. 83–3 at 31–32). Plaintiffs disagreement with the medical treatment provided does not raise a material issue of fact on the subjective element of his deliberate indifference claim. *See Evans v. Manos,* 336 F.Supp.2d 255, 261 (W.D.N.Y.2004) ("allegations of malpractice alone do not state a constitutional claim").

Further, Dr. Raab's uncontroverted expert opinion is that "Plaintiff received appropriate evaluation and treatment during his incarceration at ECHC and ECCF." (*Id.* at ¶ 5). Dr. Raab explained that because there was no drainage from Plaintiff's sores, the sores could not be cultured. (*Id.* at ¶ 7). Because Plaintiff's sores could not be cultured, "[i]t cannot even be said with certainty that Plaintiff contracted MRSA … (*Id.* at ¶ 10). However, Dr. Raab opined that Plaintiff's alleged infection was "timely diagnosed and treated, with the appropriate and expected care. Plaintiff was seen a number of times by medical staff and proscribed the antibiotic, Bactrim DS, which is used commonly for fighting infections, including MRSA." (*Id.* at ¶ 12).

The fact that Plaintiff may disagree with the course of treatment provided for his sores does not negate the fact that Plaintiff was treated in a manner consistent with the reasonable and accepted standard of care for his ailment. There is no evidence that Defendants were even negligent with respect to their treatment of Plaintiff, let alone deliberately indifferent to his medical needs. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's claims of deliberate indifference to his serious medical needs.

## V. Conditions of Confinement

 Plaintiff claims he contracted MRSA as a result of the "deplorable condition of the intake holding cells" at ECHC. (Dkt. 50 at ¶ 2). Plaintiff alleges that the holding cells were overcrowded, had overflowing toilets, and had poor ventilation. (*Id.* at ¶¶ 3–6). Plaintiff claims that Defendants Livingston, Bienko, Howard, Jenkins, and Koch were deliberately indifferent to the unsanitary conditions at ECHC. (*Id.* at ¶ 7). Defendants contend that

"Plaintiff's alleged deprivations are not sufficiently serious to satisfy the objective prong of the cruel and unusual test because the duration that he was confined with these alleged deprivations was minimal." (Dkt. 83–1 at 14).

"In a pretrial detainee's challenge to conditions of confinement under the Fourteenth Amendment, the proper inquiry is whether those conditions amount to punishment of the detainee." *Patterson v. City of New York*, No. 11 Civ. 7976, 2012 WL 3264354, at *5 (S.D.N.Y. Aug. 9, 2012) (quotations omitted). "If the conditions under which one is held have no reasonable connection to a legitimate goal of the state, then one logical assumption is that they are imposed for no other purpose than to punish." *Turkmen v. Hasty*, 789 F.3d 218, 244 (2d Cir.2015); *see also Cano v. City of New York*, 44 F.Supp.3d 324, 334 (E.D.N.Y.2014). "If the conditions do not amount to a 'punishment,' allegations that defendants have denied plaintiff access to basic human needs are evaluated under a standard of 'deliberate indifference.'" *Milo v. City of New York*, 59 F.Supp.3d 513, 524 (E.D.N.Y.2014). "The standard requires a plaintiff to establish both that his or her conditions of confinement fell below the minimal civilized measure of life's necessities, and that defendants knew of and disregarded an excessive risk to the detainee's health or safety." *Id.* (quotations omitted); *see Walker v. Schult*, 717 F.3d 119, 125 (2d Cir.2013). "Claims for deliberate indifference to a ... serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Caiozzo v. Koreman*, 581 F.3d 63, 71 n. 4 (2d Cir. 2009).

Here, there is no evidence that Plaintiff was placed in the holding cell at ECHC with any sort of intent to punish Plaintiff by exposing him to the alleged conditions. Rather, it seems that the conditions Plaintiff alleges were simply the conditions present in the ECHC holding cell to which any individual may be exposed. Accordingly, the Court considers Plaintiff's conditions of confinement claim under the deliberate indifference standard.

Under the objective prong, a detainee "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker*, 717 F.3d at 125. "[T]here is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir.2012). "But the Constitution does not mandate comfortable prisons...." *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

At his deposition, Plaintiff testified that he was at the central booking cell for "numerous hours." (Dkt. 83–3 at 17:11–20). According to Plaintiff, the cell was "overcrowded and stunk, there was [sic] feces, the toilet was overflowing, I remember the phone was ripped out of the wall, the wires were hanging." (*Id.*). Then, according to Plaintiff, he went through "a medical scanning" and he was transferred to the "other side" of the holding cells where he remained for "numerous hours" before begin transferred into orange clothing and moved to a unit. (*Id.*).

"[W]hether exposure to human waste is cruel and unusual depends on both the duration and the severity of the exposure." *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir.2015). "The severity of an exposure may be less quantifiable than its duration, but its qualitative offense to a

prisoner's dignity should be given due consideration." *Id.* at 69. "Although the seriousness of the harms suffered is relevant to calculating damages and may shed light on the severity of an exposure, serious injury is unequivocally not a necessary element of an Eighth Amendment claim." *Id.* In other words, the Court must consider both the severity of the conditions to which Plaintiff was exposed and the duration he was exposed to the conditions.

Here, Plaintiff testified that he was exposed to the conditions for "numerous hours." (Dkt. 83–3 at 17). This limited period tends to suggest that any exposure did not rise to the level of a constitutional violation. *See McCree v. Messina,* No. 14–CV–5201(JPO), 2015 WL 4299546, at *3 (S.D.N.Y. July 15, 2015) ("the approximately eleven-hour period during which McCree was allegedly exposed to pools of waste is insufficient in duration to constitute a sufficiently serious deprivation of the 'minimal civilized measure of life's necessities'"); *Little v. Mun. Corp.,* 51 F.Supp.3d 473, 491 (S.D.N.Y.2014) (finding exposure to sewage-flooded cells for "at most, eight and a half hours" was a "single unfortunate incident" that did not provide grounds for a constitutional violation); *Florio v. Canty,* 954 F.Supp.2d 227, 235 (S.D.N.Y.2013) ("Florio was exposed to waste only for brief periods; it appears that his total exposure was less than a few hours. While no doubt unpleasant, these incidents are insufficiently continuous or chronic to withstand defendants' motion to dismiss."); *Myers v. City of New York,* No. 11 Civ. 8525(PAE), 2012 WL 3776707, at *7 (S.D.N.Y. Aug. 29, 2012), *aff'd,* 529 Fed.Appx. 105 (2d Cir.2013) ("A detainee who is regularly forced to sleep on the floor or on a filthy surface, or who is housed for a sustained period of time in filthy conditions, may state a claim for unconstitutionally unsanitary conditions; however, courts have only found such claims in situations that lasted at least for multiple days.").

Here, at best, Plaintiff was exposed to unsanitary conditions of confinement for a period of hours. As a matter of law, this duration of the type of exposure alleged does not rise to the level of a constitutional violation. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's conditions of confinement claim.

## VI. Retaliation

██ Plaintiff alleges that on August 9, 2008, he confronted Defendant Usinski in front of witnesses to express his concerns about his medical treatment, and Defendant Usinski responded: "If you have a problem with medical sue medical." (Dkt. 50 at 19). As a result, Plaintiff filed a grievance on August 11, 2008, and after he filed his grievance, Plaintiff claims Defendant Usinski and another officer took him to a segregation unit, where they "interrogated" him about his grievance statement and told him to retract his quote from Defendant Usinski saying to "sue medical." (*Id.* at ¶ 20). Plaintiff alleges that he did retract his statement because of these threats. (*Id.* at ¶ 21).

Defendants contend that although participation in the prison grievance system is protected speech, Plaintiff has not demonstrated that he suffered any adverse action on the part of the Defendants. (Dkt. 83–1 at 10). In support of their summary judgment motion, Defendants submit a declaration from Defendant Usinski. (Dkt.83–7). In that declaration, Defendant Usinski, while not addressing Plaintiffs claims that he interrogated him, acknowledges that he received a grievance from Plaintiff and forwarded it to the Commission on Correction. (Dkt. 83–7 at 5–6). The grievance cited by Defendant Usinski appears to

make reference to Defendant Usinski's statement to "sue medical." (Dkt. 83–7 at 5; Dkt. 83–2 at 16–19). In other words, it does not appear that Plaintiff retracted the statement from his grievance as he claims in his complaint.

■ "A First Amendment retaliation claim requires that the plaintiff show (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Barnes v. Alves,* 58 F.Supp.3d 296, 315 (W.D.N.Y.2014) (quotation omitted). It is well-established that "the filing of prison grievances is a constitutionally protected activity...." *Davis v. Goord,* 320 F.3d 346, 352–53 (2d Cir.2003). "Adverse action," defined objectively, is "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.'" *Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir. 2004) (quoting *Davis,* 320 F.3d at 353).

The record before the Court does not support Plaintiffs claims of retaliatory adverse action by Defendant Usinski. Although Plaintiffs filing of a grievance is considered protected speech, the record does not support Plaintiff's claim that he suffered an adverse action as a result of filing the grievance. Plaintiff alleges in his second amended complaint that he was intimidated by the "two huge officers" and was placed in duress and fear by the actions of these individuals, causing him to retract statements from his grievance. (Dkt. 50 at ¶¶ 20–21).

However, in support of the motion for summary judgment, Defendant Usinski produced a sworn declaration in which he states that he processed Plaintiff's grievance on August 12, 2008, by faxing it to the Commission on Correction in Albany, New York. (Dkt. 83–7 at ¶¶ 5–6). The record

also contains a copy of Plaintiff's grievance, and contrary to Plaintiff's allegations, the grievance includes the language that Defendant Usinski allegedly told Plaintiff to "sue our medical staff." (Dkt. 83–2 at 17–19). In other words, it appears that Plaintiff's grievance including the language that Defendant Usinski told him to "sue medical" was in fact filed with the Commission on Correction.

Accordingly, there is no evidence of an adverse action sufficient to raise a material issue of fact as to Plaintiff's retaliation claim. As a result, the Court grants Defendants' motion for summary judgment.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt.83) is granted and Plaintiff's complaint is dismissed with prejudice. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.